## JOHN MURPHY

*v.*

## H. S. & H. W. OTTENHEIMER.

1. PARENT AND CHILD—*liability of father to persons selling goods to his son.* There must be an express promise, or circumstances from which a promise by the father can be inferred, to hold him liable for necessaries furnished his infant child by a third person.

2. SAME—*authority of child as agent to make purchases.* If a father permits his minor child to purchase goods on his account, whether for himself or the father, and the latter pays for them without objection, it will afford a reasonable presumption of agency with full power to make the purchases. The proof of such agency is the same as to a wife or servant.

3. AGENCY—*when agent may bind principal after his authority ceases.* An agent, in the employment of a person to perform certain duties for the principal, can bind the latter within the line of his duty, even after his agency has ceased, if done within a short period afterwards, and without knowledge on the part of one dealing with him, that the agency has ceased.

4. When a father permits his minor son to buy goods on his credit, the fact that the son has left the father will not prevent a recovery against the latter for goods sold to the son, by a party acting on the faith of the agency of the son, and without notice of the change of relation, or circumstances to put him on inquiry.

APPEAL from the Circuit Court of Peoria county; the Hon. JOHN W. COCHRAN, Judge, presiding.

This was a suit brought by the appellees, against the appellant, before a justice of the peace, and taken to the circuit court on appeal, where the plaintiffs recovered judgment. The facts of the case are fully stated in the opinion of the court.

Messrs. JOHNSON & HEWITT, for the appellant.

Messrs. BIBB & LAMBERT, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellees seek to recover for a bill of goods sold by them to the son of appellant, in the summer of 1874. The goods were charged to appellant. When the bill was presented the

father declined to pay for the goods, on the ground that they had been purchased without authority and against his will. On the trial in the court below, plaintiffs recovered a verdict for $69.55. The court, after overruling a motion for a new trial, rendered a judgment on the verdict, and defendant appeals and asks a reversal.

It appeared on the trial that appellees had been, prior to 1873, the tenants of appellant, and he had purchased goods of them during the time, and the bills for the same had been deducted from the rent, on settlement. One or two bills were settled by appellant's business agent. Appellees claim, that during this time, and they so testified, appellant's son was in the habit of purchasing goods of appellees, and they were charged in these bills, and were paid for by appellant without objection. On the other hand, appellant testifies that his wife or himself made the purchases, and he denied all knowledge that his son ever purchased goods of appellees that were charged to him, before making this bill. It is conceded that appellant at no time ever notified appellees not to furnish or sell goods to his son on his credit. Appellant also swears that he directed another person to furnish his son with clothing, but there is no evidence the fact came to the knowledge of appellees. Appellant also testified that his son left home about the 4th of July of that year, when but a few articles, of small value, had been purchased. But appellees swear that they were not notified of, nor did they know of the fact, and they also deny all knowledge of appellant's absence from home when the greater portion of the goods were purchased.

It is insisted, on these facts, that the jury were not warranted in finding that the boy had authority to purchase on his father's credit. It was held, in the case of *Hunt* v. *Thompson,* 3 Scam. 179, that there must be an express promise, or circumstances from which a promise, by the father, can be inferred, to hold him liable for necessaries furnished his infant child by a third person. It is there said that such a promise is indispensably necessary. If the promise is express, there can be no difficulty in holding the father liable; but

where the promise is to be inferred from circumstances, it is frequently a matter of no small difficulty to determine whether such liability exists.

Where the father permits his minor child to purchase goods on his account, whether for himself or for the father, and he pays for them without objection, it is a reasonable presumption that the minor had authority, and was the agent of the father, having full power to make such purchases. The proof of such authority is the same as the agency of the wife or a servant. The circumstances which authorize the inference of authority in the one case, will be sufficient in either of the others,—in each the question being, whether there was authority to act as agent. When the agency is found to exist, the law then implies a promise, as in the case of any other agency. These are the rules that govern this character of transactions.

The principal question, then, is, whether the circumstances shown in evidence warranted the jury in finding the verdict. If appellees' testimony were taken alone, there would seem to be no doubt that the boy had purchased goods of them for several years and had them charged to his father, and that he, without objection, paid for them. This they swear, without qualification; and two or three items, of small value, are specified. Their clerk corroborates them in this statement. But appellant denies that such was the fact. In this conflict it was for the jury to reconcile the evidence, if that could be done, and if not, to determine to whom the credit for truth should be given. They saw the witnesses on the stand and observed their demeanor, intelligence, fairness and other circumstances, which are not before us, and their finding should not be lightly disturbed. We are not able to say they erred in giving weight to the evidence of appellees rather than to that of appellant. If they believed the evidence of the former and not of the latter, then they could not avoid the conclusion that the son was held out to appellees as an authorized agent of the father to make the purchase on the

father's account, as he had been previously in the habit of doing.

But it is urged that the son had left home against the will of the father, and that appellees should have known the fact. They testify that they did not know of it, nor had they heard of it. It seems that most of these articles were purchased whilst the father was in Minnesota, and, we presume, when he was not keeping house, so that the son could live with him, in fact. Whilst thus absent no one's attention would be attracted by the fact that the son did not board or lodge at his father's house, if such was the fact.

It was, at an early day, held, and it is believed to be the correct doctrine, that an agent in the employment of a person to perform certain duties for the principal, can bind the latter within the line of his duty, even after his power has ceased, if done within a short period afterward, and without knowledge that he had ceased to be the agent. Paley on Agency, p. 142, lays down the rule, that "the implied authority arising from employment continues after the agency has ceased, unless the parties giving credit to it either may be supposed to have had notice of the change, or from length of time or other circumstances, ought not to have inferred that it continued." Parsons on Contracts, vol. 1, p. 258, says that a father may emancipate his minor son and thus lose the right to claim the son's earnings, "and a stranger, not knowing of this arrangement, might still interpose it to defeat the father's claim for the son's earnings; but if a stranger supplied a son at a distance from his home, with suitable necessaries, in ignorance of such arrangement, there is no sufficient reason for holding that it would bar his claim against the father." This authority goes farther than we would be willing to sanction; but it, with Paley on Agency, shows that the mere change of the relations of the father and son, unknown to appellees. would not preclude them from still continuing to act on it as had been previously done, especially as the credit was given at so short a period after the son had left. The relation of agency, if it existed, might be presumed to still exist, until notice was

received of the termination of the relation, or until circumstances transpired to put those who had acted upon the agency on inquiry. The change of relations between appellant and his son do not appear to have been generally known; at any rate, it was not proved to have been known outside of the family, and if so, it could not be required of strangers, who could know nothing of it, to know the fact that the relations of the parties had changed.

Appellant has criticised the instruction given for appellees; but, on a careful examination, we fail to see any objection to it. The evidence, and the law applicable to it, fully warranted and even required it to be given. Nor do we see that the court erred in refusing to give a portion of the instructions asked by appellant. They failed to announce correct legal principles, or such as were applicable to the case. The first instruction which was given for him was not correct, and was more favorable to him than he was entitled to have given.

We fail to perceive any error in this record, and the judgment of the court below must be affirmed.

*Judgment affirmed.*