## JUDGE VS. BARROWS.

*November 26 — December 11, 1883.*

*Liability for support of minor child — Nonsuit.*

B. covenanted with the father to support and maintain in his house a minor child, the sister of his wife. Subsequently the child went to live in the family of J. (whose wife was also her sister), and was supported by J. for about six years. In an action by J. against B. for compensation for such support, the evidence tended to show that the child went to live with J. with the assent of B., but did not tend to show that B. was not keeping house during all the time and in a condition to support the child, nor that he was unwilling to do so, nor that J. received the child with any expectation of being compensated by B. for her support, nor that J. ever demanded any compensation until after the expiration of the six years. It appeared also that it was the wish of the child's father that she should live with J. as his adopted child. *Held,* that a nonsuit was properly granted. *McGoon v. Irvin,* 1 Pin., 526, distinguished.

APPEAL from the Circuit Court for *Racine* County.

The case is thus stated by Mr. Justice CASSODAY:

"This is an appeal from a judgment of nonsuit in an action upon an alleged implied contract for the support and maintenance of Maggie Bunce, from October, 1871, when she was about eight years old, to August 15, 1877, when she was about fourteen years old. The evidence given in support of the action was a bond given by the defendant to Abiram Bunce, father of Maggie, reciting a consideration of $2,000, wherein and whereby the defendant, in effect, agreed to support and maintain in his house the said Abiram during his life, and also to keep and maintain, or cause to be kept and sufficiently maintained, in his house, with meat, drink, and clothing, the said Maggie, and also to give her a good common-school education, and all other things necessary and convenient, until she should arrive at the age of eighteen years. This bond was executed by the defendant,

*Barrows*, and Abiram Bunce, November 18, 1870, and Abiram died in 1874. It appears from the oral evidence that at first Maggie lived for a short time at the house of the defendant; then she lived with Mrs. Perham, a sister of the defendant, for some months; then with Mrs. Campbell; then again with the defendant, whose wife was a sister of Maggie; and finally, through the influence of the plaintiff's wife, who was also a sister of Maggie, and the father, Abiram Bunce, she went to live with the plaintiff, as stated. In October, 1871, an agreement was drawn up, between the plaintiff and Abiram Bunce, whereby Abiram agreed that the plaintiff was to have and to hold Maggie as his own child, and the same was written so that had the plaintiff signed it he would have covenanted, promised, and agreed to take, have, and to hold Maggie as his own child. This proposed agreement was signed by A. Bunce, and by *Barrows as a witness, only*, but the plaintiff never signed it, having declined so to do. There was evidence tending to show that Maggie went to live with the plaintiff with the knowledge and assent of the defendant, and that she remained there during the time stated. The foregoing is the substance of all the evidence."

*Edwin White Moore*, for the appellant.

For the respondent there was a brief by *Hand & Flett*, and oral argument by *Mr. Hand*.

CASSODAY, J. It is urged that the bond given by the defendant to Maggie's father for the consideration named put him *in loco parentis* and made him liable for support under all circumstances which would have made the father liable. Under that assumption it is urged that, had no such bond been given, and Maggie had left her father's house and commenced living with the plaintiff under the same circumstances that she left the defendant's house, then that the father would have been liable for her maintenance and sup-

Judge vs. Barrows.

port without any express agreement whatever, but merely upon a contract implied from such circumstances. In support of this proposition, counsel rely upon *McGoon v. Irvin*, 1 Pin., 526. In that case McGoon was divorced from his wife, and their children, who appear to have been of tender years and in a helpless condition, were, from necessity, left with the mother. Irvin subsequently married the divorced wife, and thereafter brought the action for the support and maintenance of such children against their father, who was bound to support them, though living absent from him and with their mother. DUNN, C. J., stated the ground of liability thus: "And when a parent permits a stranger to maintain, support, and instruct such children [of tender years and helpless], in no way objecting to the act, but rather assenting and advising therein, the law will presume that he knows his obligations, accepts the services, and assumes to pay." Of course that was said with reference to the facts of that particular case. The children were not living with the father at the time, but necessarily absent from him and with the mother. In such case the law seems to imply an agency on the part of the mother to bind the father for such necessaries. *McMillen v. Lee*, 78 Ill., 443. The facts in the case of *McGoon v. Irvin* are quite dissimilar from those here presented, even upon the assumption of counsel.

A father is liable for necessaries furnished his infant child only upon an express promise, or upon proof of circumstances from which a promise may be implied. *Hunt v. Thompson*, 3 Scam., 179; *Gotts v. Clark*, 78 Ill., 229; *Murphy v. Ottenheimer*, 84 Ill., 39; *Schnuckle v. Bierman*, 89 Ill., 454. Where the infant is *sub potestate parentis*, there must be a clear and palpable omission of duty to support, on the part of the parent, in order to authorize any other person to act for and charge the expense upon the parent. *Tompkins v. Tompkins*, 11 N. J. Eq., 512; *Townsend v. Burnham*, 33 N. H., 270. Where the father is ready to

supply such necessaries, he cannot be bound by the contract for the same with a third person without express or implied authority from the father to make the contract.  *Johnson v. Smallwood*, 88 Ill., 73.  In Missouri it was held that "a parent cannot be held for medical services rendered to a minor child, although coming under the head of necessaries, in a case where it appeared that they were given without the consent of such parent, and also that the parent employed a family physician of his own, and never refused to supply the child with medical attention." *Rogers v. Turner*, 59 Mo., 116.

Under the authorities cited and the circumstances proven, it is difficult to see upon what ground the defendant could be held liable.  There is nothing to indicate that he was not, during all the time in question, keeping house and in a condition to support and maintain Maggie at his own house, but the contrary.  There is nothing to indicate that there was ever any unwillingness on the part of the defendant to support and maintain her at the place and in the manner provided in the bond, but the contrary.  It appears to have been the expressed wish of the obligee in the bond — the father of Maggie — that she should live with his daughter and son-in-law,— the plaintiff and his wife,— not for compensation to be paid by the defendant, but as their adopted child.  This he sought to effect by written agreement.  There is nothing to indicate that the plaintiff ever received Maggie into his family with any expectation of ever receiving any compensation from the defendant, but the contrary.  Had there been any such expectation, we would naturally suppose it would have been followed by some exaction — weekly, monthly, or at most yearly.  Not only was there an utter failure of any claim of compensation during the life of the father, but also during the whole six years that she lived with the plaintiff.  During that time no conversation seems to have been had between the parties in relation to any

payment by the defendant. Just what arrangement was made, or understanding had, between the wife of the plaintiff and the father of Maggie, does not appear. Undoubtedly the obligation with respect to Maggie, created by executing the bond, might, with other facts, aid in establishing an implied contract to support, but standing alone, or with the other facts here proven, it furnishes no such inference. Nor would the admission of the rejected evidence in relation to the defendant's having paid Mrs. Perham for keeping Maggie, have made the plaintiff's case any stronger. Besides, that evidence was clearly inadmissible.

*By the Court.*— The judgment of the circuit court is affirmed.