Tier *v.* Lampson.

A. P. TIER *v.* JONAS LAMPSON, *appellant.*

[THREE SUITS.]

*Principal and Agent.*

The implied authority arising from general employment continues even after the agency has in reality ceased, as regards parties who have before given, and continue to give, credit to it, and who have not actually received, and can not be presumed to have had, notice of the change.

THESE actions were all in assumpsit, and were brought respectively upon three promissory notes, which, with the facts in the case, are set forth in the opinion of the court. The causes were referred to a referee, upon whose report the county court, at the March Term, 1861, KELLOGG, 'J., presiding, rendered judgment *pro forma* in each of the cases for the plaintiff for the amount of each note respectively, to which the defendant excepted.

*Washburn & Marsh*, for the defendant.

*A. L. & H. E. Miner*, for the plaintiff.

KELLOGG, J. The notes upon which the plaintiff claims to recover in these three suits were executed to him by one Francis Draper in the name of the defendant, and were respectively signed "Jonas Lampson, by Francis Draper." One of the notes is for sixty-eight dollars, dated September 8th, 1854; another is for fifty dollars, dated April 7th, 1856, and the other is for twenty-seven dollars, dated August 15th, 1857. It appears

from the referee's report that Draper carried on the business of a blast furnace, or of making pig iron from the ore, and also of a store in connection therewith, at Dorset, from the spring of 1853 to the year 1858, in the name of the defendant. The note dated September 8th, 1854, was given for the plaintiff's interest in a horse which Draper purchased, assuming to act as the agent of the defendant, and it appeared that this horse was used in and about the furnace business for some two or three years after that time, and was finally sold by Draper and the proceeds of the sale were applied by him in the purchase of goods which went into the store. The plaintiff worked in the furnace business carried on by Draper in the defendant's name, from the time that business was commenced "till April, 1854, and for some three or four years thereafter," and the other two notes were given for balances due to him for his labor in and about the furnace business. The question to be decided is, whether the facts found by the referee will justify a recovery by the plaintiff against the defendant upon these notes or upon the consideration on which they were executed.

The contract between the defendant and Draper, dated 28th March, 1853, contemplated that the defendant should purchase the furnace and ore bed at Dorset, and should put the furnace in proper condition for manufacturing pig iron, and keep the same in operation for one year, he providing and furnishing "all necessary and proper tools, utensils, labor, teams, carriages, board, and all other things necessary and proper for carrying on the business of making pig iron from the ore." At this time, the defendant was expecting to remove to Dorset and carry on the business under his own personal supervision, as well as in his own name. The defendant, during the year mentioned in the contract, made advances, as contemplated in the contract, in money and other property, amounting to about eight thousand dollars. About the 1st of May, 1853, Draper was at the defendant's house in Windsor, and it was then agreed between him and the defendant that the defendant should not remove to Dorset, as at first contemplated, but that Draper should repay to the defendant all sums then advanced, or thereafter to be advanced, by him, with interest, and should also pay the defen-

dant for his trouble in and about the business ; and, at the same interview, Draper told the defendant that he should want to do business in his, the defendant's, name, and the defendant replied that "he could not do anything to make him (the defendant) liable." Soon after the making of the contract of 28th March, 1853, Draper and the plaintiff removed from Windsor to Dorset, and commenced work upon the furnace, and when the plaintiff began his work in and about the furnace, Draper told him that "his work would be for the defendant, and not for him, the said Draper." Up to the time of the making of the agreement between the defendant and Draper on or about the 1st May, 1853, the furnace business was carried on by Draper for the defendant, as well as in his name, and this was contemplated in their contract dated 28th March, 1853. That contract by its express provisions also contemplated that "labor and teams" were proper and "necessary" for carrying on the business, and, during this period, Draper had the management and control of the business which was so carried on, and was acting in the character of a general agent of the plaintiff while so carrying  on the business. The plaintiff was employed by Draper, not for himself, but for the defendant; and, in this state of the facts, it can not be doubted that the defendant was liable, at the time the plaintiff commenced his labor, upon the contract made with him for that labor by Draper, acting in the name and on the behalf of the defendant. The facts reported furnish no ground for any inference that the plaintiff gave credit to Draper, or to any one but the defendant. By permitting another to hold himself out to the world as his agent, the principal adopts his acts, and will be held bound to the person who gives credit thereafter to the other in the capacity of his agent, 2 Kent's Comm. 614. Under the agreement made on 1st May, 1853, the defendant, as between himself and Draper, was to have no interest in carrying on the furnace business, but was to be repaid by Draper for his advances and compensated for his trouble, and, after this time, the business was in fact so considered and treated as between the defendant and Draper. But Draper continued to carry on the business in the defendant's name as before ; and the defendant knew that Draper was so carrying on the business

as late as February, 1855, when he, for the first time, told Draper that he must not do business in his name any longer. No notice was given by the defendant to the plaintiff of any change in the relations between himself and Draper at any time, and it does not appear that the plaintiff had any reason to suppose that those relations were different at the time when these notes were executed from what they were when he commenced his labor under his first employment by Draper. The defendant virtually authorized Draper to carry on the business in his name, and this was an apparent authority to him to procure such labor and teams as might be necessary in carrying on the business. The plaintiff would be justified in relying on this apparent authority to Draper until he had reason, either from express or public notice proceeding from the defendant, to believe that Draper was no longer authorized to act as his agent. The plaintiff, having the right, at the commencement of his labor, to look to the defendant for payment, and having no notice of any change in the relations between the defendant and Draper, would be justified in considering the contracts of Draper, while continuing to act professedly as the agent of the defendant, as binding upon the defendant. The implied authority arising from *general* employment continues even after the agency has in reality ceased, as regards parties who have before given, and continue to give credit to it, and who have not actually received, and can not be presumed to have had, notice of the change ; Chitty on Contracts, 10th Amer. Ed. 225. We are unable to distinguish between the liability of the defendant for the labor of the plaintiff before the agreement of 1st May, 1853, and his liability for the plaintiff's labor after that agreement ; and we consider the defendant liable to the plaintiff on account of the labor and property which formed the consideration of the notes in suit.

The judgment of the county court in each of these three suits, which was *pro forma* in favor of the plaintiff, is accordingly affirmed.