KING WROUGHT IRON BRIDGE CO. (FIRST NAT. BANK OF MANHATTAN v.). See Case No. 4,803.

---

## Case No. 7,824.

### In re KINKEAD.

[3 Biss. 405; 7 West. Jur. 110; 7 N. B. R. 439; 6 Am. Law T. Rep. 45; 5 Chi. Leg. News, 217; 1 Am. Law. Rec. 533; 3 Bench & Bar (N. S.) 41.] [1]

District Court, N. D. Illinois. Jan. 28, 1873.

MARRIED WOMEN AS BANKRUPTS — COMMON LAW RULE RELAXED—ILLINOIS RULE — MAY ENGAGE IN TRADE — BE A PARTNER — EVEN WITH HUSBAND—CONTRIBUTE HER SHARE — PARTNERSHIP CREDITORS FIRST PAID — MAY BE ADJUDGED BANKRUPT.

1. The common law rule that a married woman cannot enter into a co-partnership, or make any valid contract, has been much relaxed, and the rule in equity now seems to be that she may hold, control, and dispose of her separate property, incur liabilities on the strength of it, and

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 1 Am. Law Rec. 533, contains only a partial report.]

that it may be subjected to the payment of her debts contracted in or about the management, improvement, or purchase of such property.

[Followed in Re Collins, Case No. 3,006.]
[Cited in Kinney v. Sharvey, 48 Minn. 96, 50 N. W. 1025.]

2. In Illinois, a married woman retains control of all the property, real or personal, which she had at the time of her marriage, or acquired thereafter from any person other than her husband, and may make contracts in regard to the same, which can be enforced either at law or in equity, to the same extent as if she were sole.

3. She may also engage in trade with her husband's consent; and it seems, even without such consent, using her own property, and may bind herself by all contracts she makes in her business.

4. She may enter into a co-partnership, even with her husband.

[Cited in Clark v. Hezekiah, 24 Fed. 665.]

5. Where a man and his wife held themselves out to the world as partners in trade, it will be presumed, in the absence of proof, that she contributed her share of the capital, and that her time, skill, and earnings went into the business.

6. When, in such case, the firm become bankrupt, the partnership creditors are entitled to be paid out of the partnership assets in preference to an individual creditor of the husband.

7. Such a partnership can be adjudged bankrupts, and it seems, the wife may also be individually adjudged bankrupt.

[Cited in Re Lyons, Case No. 8,649.]
[Cited in brief in Lawver v. Gladden (Pa. Sup.) 1 Atl. 660.]

In bankruptcy. This was an application by Miles Manser, an individual creditor of Joseph D. Kinkead, to be paid a dividend on his claims, amounting to $15,000, out of the assets of the firm of Kinkead & Co. On the 7th of December, 1871, J. V. Farwell & Co., of Chicago, filed their petition in this court, setting forth that they were creditors of Joseph D. Kinkead and A. E. Kinkead, his wife, who were then doing business as co-partners under the firm name of Kinkead & Co., at Pontiac, Livingston county, in this district, and alleging that said firm of Kinkead & Co. had been guilty of certain acts of bankruptcy set forth in the petition. To this petition a general denial was filed, and the issue thus made was tried by the court on the 16th of February, 1872, resulting in finding said firm of Kinkead & Co., and the said J. D. Kinkead guilty of the acts of bankruptcy charged against them, and an adjudication of bankruptcy was entered in accordance with this finding. No plea of coverture was interposed by Mrs. Kinkead, but inasmuch as it appeared from the petition, and also from other papers and proofs in the case, that she was a feme covert, no specific adjudication was entered against her. J. D. Kinkead and his wife had been engaged in the mercantile business at Pontiac for several years immediately prior to the commencement of these proceedings in bankruptcy against them, and had both given their attention and skill to the business, but it did not appear how much each of them had contributed to the capital stock of the firm, nor, in fact, whether any

capital other than their credit and labor was furnished by either. At the time said firm was adjudicated bankrupt, they were indebted for goods furnished in the course of their trade as merchants to an amount exceeding $6,000, while the assets of the firm were about $4,000, and there appeared to be no assets of J. D. Kinkead individually. On the 29th of May, an assignee was duly elected, and afterwards Manser, this applicant, appeared before the register and proved his debts against the said J. D. Kinkead, and at the second meeting of creditors he demanded to be paid a dividend on his claims out of the co-partnership assets. To this the co-partnership creditors objected, and, at the request of the assignee, the register certified the question to the court for hearing and decision. These claims against J. D. Kinkead were contracted long prior to the formation of the co-partnership between himself and wife.

Jones, Hounshell & Lewis, for Manser, applicant.

Tenney, McClellan & Tenney, for assignee and general creditors.

The doctrine that a wife has no legal existence, and cannot hold property or make contracts, has been practically obsolete for ages. The equity doctrine is that a wife can hold separate property, and therefore that she can control and dispose of it, and incur liabilities on the credit of it, and that it can be subjected to the payment of her debts. Modern statutes have merely enacted this doctrine. Rev. St. Ill. c. 69, § 2; Pars. Partn. 25–27. The only controversy has been as to how the remedy should be administered; whether by a suit at law or in equity. The supreme court of Illinois holds that it must be in equity. Carpenter v. Mitchell, 50 Ill. 470; Yale v. Dederer, 18 N. Y. 265; Todd v. Lee, 15 Wis. 365, 16 Wis. 480; Owen v. Cawley, 42 Barb. 105. Property bought by a wife, on her own credit, is her separate property, and her husband is not liable therefor, and has no interest therein. Carpenter v. Mitchell, 50 Ill. 470; Carpenter v. Mitchell, 54 Ill. 127; Miller v. Brown, 47 Mo. 504; Kimm v. Wirppert, 46 Mo. 532; Darby v. Callaghan, 16 N. Y. 71; Knapp v. Smith, 27 N. Y. 277; Ketchum v. Walsworth, 5 Wis. 95. Illinois statute construed. Husband may be agent of wife, and there ought to be an agreement between them as to his compensation. Agency is the substance of partnership. Emerson v. Clayton, 32 Ill. 493; Cole v. Van Riper, 44 Ill. 58; Dean v. Bailey, 50 Ill. 481; Dyer v. Keefer, 51 Ill. 525; Wortman v. Price, 47 Ill. 22; Lux v. Hoff, Id. 425; Sweeney v. Damron, Id. 450. The power of a wife to buy and sell, as if she were sole, necessarily implies the right to buy and sell on joint account with another. This is partnership. There is nothing to prevent her trading jointly with her husband. She can lend money to him and recover it, or borrow from him, or make other contracts, and make herself liable to the extent of her separate property. Proceedings in bankruptcy are regarded as proceedings in equity, and governed by the same rules. They bring in all parties and interests, and make complete adjudication. In re Schuyler [Case No. 12,494]; Bump, Bankr. 302. Section 11 of the bankrupt act has been held to include aliens, femes covert, and minors. Bump, Bankr. 1; In re Goodfellow [Case No. 5,536]; In re O'Brien [Id. 10,397]; In re Book [Id. 1,637]; In re Slichter [Id. 12,943]; In re Howland [Id. 6,791]. These statutes contain restrictions not in ours.

BLODGETT, District Judge. It is contended on the part of Mr. Manser that Mrs. Kinkead, being a married woman, could not enter into a contract of copartnership with her husband, and that although the business at Pontiac was transacted in the name of Kinkead & Co., yet, as the pretended partnership was void and inoperative, by reason of the inability of Mrs. Kinkead to make a binding contract, the said J. D. Kinkead was in effect a sole trader, and the assets of the firm were in law the assets of said J. D. Kinkead.

The questions thus raised are important, not only in this case, but in many others which may arise touching the powers of married women to make binding contracts and the jurisdiction of a court of bankruptcy in the premises. There is no doubt of the soundness of the proposition advanced by the claimants' attorneys, that at common law a married woman could not, as a general rule, enter into copartnership or make a valid contract of any kind. But this rigid rule of the common law has been very much relaxed, both by the action of the courts of equity and by legislation on the subject.

The modern doctrine in equity now seems to be that a married woman may hold her separate property, can control and dispose of it, incur liabilities on the credit of it, and that it can be subjected to the payment of debts contracted in or about the management, improvement, or even purchase of such property. Thus far courts of equity seem to have gone without reference to statutes on the subject. Carpenter v. Mitchell, 50 Ill. 470.

By the act in relation to the rights of married women, adopted by the legislature of this state in 1861, full control is given to a married woman of all real and personal property owned by her at the time of her marriage, or which she acquired during coverture from any person other than her husband.

In the exposition of this statute, the supreme court of this state has, finally, in the late case of Cookson v. Toole [59 Ill. 515], decided that a married woman can be sued at law on a contract made in relation to her separate property. By the act of the legislature of this state, passed in 1869, a married

woman is invested with the full control of her own earnings, with the right to sue for and collect the same in her own name.

This legislation, and the interpretation thereof by the courts, has wrought a most substantial change in the rights of married women under the laws of this state. At common law all a woman's personal estate, and the control of her real estate during coverture, passed, on her marriage, to her husband, she could make no contract during coverture, and contracts made even while unmarried could not be enforced at law, and only in a few exceptional cases in equity. Now the wife retains the control of all the property she had at her marriage, and which she acquires after marriage from any person other than her husband, and may make contracts in regard to the same during her coverture, which can be enforced either at law or in equity to the same extent as if she was sole.

At common law the earnings of the wife belonged to the husband, and he alone could sue for and collect the same. Now the wife is absolute mistress of her own earnings, and can bring suit in her own name to collect them. She may superintend her separate property, make binding contracts in relation thereto, devote her time to such occupation as is most congenial to her tastes and control her earnings.

She may, therefore, it seems to me, engage in trade either with or without her husband's consent, certainly with his consent, using her own property in the enterprise, and may bind herself by all contracts she makes in her business. She may own the whole of a stock of merchandise or the machinery and furnishings of a manufactory, and have the entire profits and be liable for the losses; and if she may own the whole there is certainly no obstacle to her owning a half or any other share of the stock. In other words, she may become a partner with another person, and why not with her husband? I can see nothing in the relation of husband and wife which would prevent the wife from being her husband's partner in business if she could be a partner with any other person. The logical effect of the statutes and decisions thereon in this state tend inevitably to this conclusion, and I can see no sound reason for stopping short of that point. I conclude, therefore, that Mrs. Kinkead could be and was a member of the firm of Kinkead & Co., and that it was a valid partnership at the time it was adjudged bankrupt.

In the case before me, Kinkead and his wife held themselves out to the world as partners in the trade of merchants—a relation which I think, as the law stood at the time, they had the right to form. In that capacity they obtained credit and contracted debts to a large amount. The firm had assets on the faith of which credit had been given them. In the absence of positive proof upon the point, the court must presume that Mrs. Kinkead contributed her portion of the capital to start the business, and that she, as she lawfully might, has devoted her time, skill and business ability to the affairs of the firm. Her earnings, in other words, have gone into this business. If the business had proved successful she would have been entitled to her share of the profits, and a court of equity would have compelled an account between herself and husband in relation to the partnership transactions.

It is impossible for the court to say to which one of the individual members of this firm the credit was given, or rather it is not correct to say it was given to either. The credit was to the firm, and the copartnership assets are a trust fund for the payment of the partnership debts; and no individual creditor of either partner can be paid until the firm debts are paid. Mr. Manser, the creditor before the court, has not trusted this firm, and has not, in my opinion, any legal or equitable claim to any part of this fund till the copartnership creditors are paid. His debt was not contracted upon the faith of the assets now in the hands of the court, while the copartnership debts proved were many of them contracted in the purchase of the identical assets which came to the hands of the assignee.

For the purpose of this case, it is not necessary to decide that a married woman may be sued at law on her contracts or undertakings, as a court of bankruptcy is clothed with all the powers of a court of equity. And if Mrs. Kinkead, with the consent of her husband, could enter into copartnership with him or any other person, then she might be declared a bankrupt on the petition of creditors, or at least the firm as a business entity may be so adjudged for the purpose of distributing the assets among creditors. Here is a firm with assets and liabilities. Insolvency intervened, and the creditors of the firm have the first right to the assets. These a court of bankruptcy will marshal and distribute in the manner required by the bankrupt law, as a court of equity would do in the absence of a bankrupt law, that is, it will apply the assets to the payment of the debts, which are an equitable lien on those assets, without regard to whether the creditors have any remedy at law or otherwise to enforce any unpaid balance.

The fact that Mrs. Kinkead was not individually adjudged a bankrupt does not, in my view, change the aspect of the case. Such an adjudication could only be necessary for the purpose of reaching her individual property, if she has any, which is not alleged, and she may yet be so adjudged if it becomes necessary in the course of these proceedings.

The application is, therefore, refused.

NOTE. The rulings as to the application of the bankrupt law to married women varies in the different states, according to the several statutes concerning the rights and liabilities of married women, and the constructions of the

state tribunals. Since the above decision of Judge Blodgett, made under the rulings of the supreme court of Illinois ending with Cookson v. Toole, that court in the case of Martin v. Robson [65 Ill. 129] has gone still further and swept away the ancient landmarks as to the rights and liabilities of femes covert, in an elaborate opinion by Thornton, J., holding that even in cases of tort they may now be considered as occupying the legal position of femes sole.

In New York, where, since the statutes of 1848 and 1849, and the more recent amendments and the numerous decisions of the court of appeals, it is well known that married women may be sued at law on their contracts. It seems to have been taken for granted in the federal courts that they can be proceeded against in bankruptcy, and such has been the practice. In re O'Brien [Case No. 10,397]; Graham v. Stark [Id. 5,676]. But under the rule in Yale v. Dederer, 18 N. Y. 265, and 22 N. Y. 450, at that time the leading cases on the subject, that in a suit against a married woman upon a promissory note, it must either appear on the face of the note that it was her intention to bind her separate estate, or it must be alleged that the note was given for the benefit of her separate estate, Judge Hall decided in Re Howland [Case No. 6,791], that a petition in bankruptcy must follow the same principle.

In the recent case of In re Goodman [Id. 5,540], October, 1873, Judge Gresham holds that inasmuch as by the laws of Indiana a married woman is not bound by her contracts except in reference to her separate property, and cannot enter a partnership with her husband, nor retain her personal earnings, a petition in bankruptcy against her, is fatally defective in not setting forth that she had a separate estate.

In Minnesota, where many of the common law disabilities have been removed by statute, and where a married woman may, under certain circumstances, engage in business in her own name, by obtaining a license from a probate justice, Judge Nelson held that where she engages in business as a member of a partnership, but without complying with the requirements of the statute, she could avail herself of her coverture to defeat bankruptcy proceedings against her. In re Slichter [Case No. 12,943].

The rule seems to be that any person capable of making a binding contract is amenable to bankruptcy proceedings, and that in so far as the common law disabilities of a feme covert are removed she comes within the jurisdiction of the law; that whenever a plea of coverture would not avail her in an action on the debt, she may be proceeded against in bankruptcy.

It was upon this principle that when, in 1772, the commissioners refused to find Mrs. Ann Fitzgerald a bankrupt, because, although having a separate property, she was a feme covert residing in the county of Middlesex, and not a trader in the city of London, Lord Apsley, on appeal, ordered the commissioners to declare her a bankrupt. The authority of this case is supported by Lord Mansfield in Ringsted v. Countess of Lanesborough, 3 Doug. 197, and Corbett v. Poelnitz, 1 Term R. 5.

The same general principle is evidently the reason of the rule according to which persons who could not otherwise have been proceeded against in bankruptcy have by trading become amenable to the proceedings, even though such trading may have been positively prohibited by law. Thus a clergyman may be a bankrupt (Ex parte Meymot, 1 Atk. 196); even though in priest's orders (Hankey v. Jones. Cowp. 745). A public officer (Highmore v. Molloy, 1 Atk. 206).

The remedy for the creditor by petition would certainly seem to be at least co-extensive with the liability of the debtor; for an infant. if he has held himself out as a trader, and sui juris, has been held amenable (Ex parte Adam, 1 Ves. & B. 494): or has affirmed the debt after attaining his majority (Belton v. Hodges, 9 Bing. 369); or if at the time of contracting the debt he made

express statements that he was of age (Ex parte Watson, 16 Ves. 265).

The doctrine that a feme covert who has been deserted by her husband, and trading as a feme sole, should be held liable on her debts, has the authority of the United States supreme court, in Rhea v. Rhenner, 1 Pet. [26 U. S.] 108.

In England, as far back as the earliest days of the custom of London, a married woman, who as a trader had contracted debts, might be proceeded against in bankruptcy. Lavie v. Phillips, 3 Burrows, 1783; Ex parte Carrington, 1 Atk. 206; Ex parte Franks, 7 Bing. 762. But the leading English case is Johnson v. Gallagher, 30 Law J. Ch. 298, in which Turner, L. J., elaborately discusses the rights and liabilities of married women. This case was expressly approved in Matthewman's Case, L. R. 3 Eq. Cas. 781; Picard v. Hine. 5 Ch. App. 274; and by Lord Romilly, master of the rolls, in McHenry v. Davies, L. R., 10 Eq. Cas. 88. All of these decisions were prior to the passage of the married woman's property act of August 9th, 1870.

Impossible as it may be to reconcile the decisions on the general question of the rights and liabilities of married women, the duty of the federal courts in administering the bankrupt act would seem to be simply to determine the status of a married woman under the existing laws of the state where the jurisdiction is to be exercised, and administer the act upon the basis of the principles thus discovered. The foundation of bankruptcy proceedings is indebtedness; but the bankrupt act does not make any new standard of liability—it simply operates upon those already existing. The application of the act to married women depends, clearly, not upon their rights but their liabilities, and those liabilities are determined by the law of the forum where the jurisdiction is invoked.

The above decision of Judge Blodgett has been affirmed by Judge Drummond, in the circuit court, on review—decision January 31, 1874, but no opinion delivered. Consult, also, opinion of Illinois supreme court, Haight v. McVeagh [69 Ill. 624], filed January 26, 1874.