[Argued November 3, 1892; decided December 26, 1892.]

## GEORGE W. SNELL et al. *v.* JOHN J. STONE et al.

[S. C. 31 Pac. Rep. 663.]

HUSBAND AND WIFE—TERMINATION OF AGENCY—NOTICE TO CREDITORS.—The separation of a husband from his wife, who has been his agent or partner, and the commencing by her of a divorce suit and excluding the husband from participation in the business, will not terminate her agency as to wholesalers who had no notice of the separation, and who had theretofore furnished her goods on the faith of such agency.

Josephine County: LIONEL R. WEBSTER, Judge.

Plaintiffs appeal.    Reversed.

*Zera Snow*, for Appellants.

*Francis Fitch*, for Respondents.

BEAN, J.— This is an action by Snell, Heitshu & Woodward of Portland against John J. Stone and C. M. Stone, husband and wife, on account for goods, wares, and merchandise sold to them by plaintiffs, and by the Blumauer-Frank Drug Company, and J. K. Gill & Company, who have assigned their accounts to plaintiff. The defendant C. M. Stone made default, but the defendant John J. Stone answered, denying the allegations of the complaint. A trial resulted in a verdict and judgment in favor of defendants, from which plaintiffs appeal, assigning error in the giving of certain instructions by the trial court.

On the trial, plaintiffs gave evidence tending to show that in 1886 the defendant John J. Stone purchased a store containing a stock of drugs, medicines, and druggist sundries, then in operation at Grants Pass, in Josephine County, and put his wife C. M. Stone in charge thereof; that for convenience the business was to be and was conducted in the name of C. M. Stone, his wife. Soon after the purchase of the store, goods were ordered and an account opened by and in the name of C. M. Stone with plaintiffs and their assignors, who are wholesale merchants in the city of Portland. About the time the account with plaintiffs was opened and the first bill of goods was shipped, they learned that C. M. Stone was a married women, and immediately wrote to her for an explanation as to why the business was conducted in her name and not that of her husband. The letter was received and read by both defendants, and answered by John J. Stone in the name of his wife, in which he stated, in effect, that while the business was conducted in the name of his wife, it belonged to both of them, and both were mutually responsible for all goods purchased, and that the business was conducted in the name of the wife

for convenience, because the husband was compelled to be absent from Grants Pass a good share of his time, looking after his other business.    In the spring of 1887, defendant John J. Stone was in Portland and called at plaintiffs' place of business and paid one hundred dollars on the account for goods sold, at which time he stated and gave plaintiffs to understand that he was interested in the business at Grants Pass, and after making a visit East to settle up some matters, he intended to return to Grants Pass and take personal charge of the business at that place, then being conducted in the name of C. M. Stone.

Defendants continued to live together as husband and wife, both taking part in the management and conduct of the business at Grants Pass, each drawing money therefrom at will, until 1888, when the defendant John J. Stone went East to attend to some private business, and while there an estrangement arose between him and his wife, which finally resulted in a suit by her for divorce in the circuit court for Josephine County, in which proceedings were afterwards had that resulted in a decree dismissing the suit.    In this divorce proceeding a controversy ar~;e as to the ownership of the drug business at Grants Pass, which defendant John J. Stone claimed and contended belonged to and was owned by him, and he so testified in said matter.    From the purchase of the goods and opening of the account in 1886 until April, 1891, plaintiffs continued to furnish goods from time to time as ordered by or in the name of C. M. Stone, without any knowledge or notice of any change in the relation of the parties or business, or of the estrangement or divorce proceedings between husband and wife, or that their relations were other or different than as disclosed in the letter written by John J. Stone to them, and from his conversation with them in Portland.    A portion of the goods were sold and delivered during the pendency of the divorce proceedings. The defendant John J. Stone gave evidence in his own behalf, contradicting much of the evidence offered by

plaintiffs, and tending to show that the goods sued for
were purchased by the defendant C. M. Stone on her in-
dividual credit.

On the evidence thus presented, the court, among other
things, instructed the jury as follows: "The jury are
instructed that if the wife engages in the management
and operation of a business in which her husband is in-
terested with her, and he permits her to contract during
said business, such wife is the agent of the husband, and
as such agent can bind her husband by her contracts; but
if during such time a separation takes place between
husband and wife; and they separate and live apart, and
sue each other for a divorce in the county where the busi-
ness was conducted, and the husband is excluded from
all participation in or control over the said business, then
under such conditions the wife is no longer the agent of
the husband, and persons who deal with her and contract
with her on her own behalf for anything other than nec-
essaries, do so at their peril, and cannot bind the husband
on such contracts unless he assents thereto." This was
manifest error   If the facts are, as the evidence of
plaintiffs tended to show them to be (and this question
they were entitled to have submitted to the jury), the
defendant C. M. Stone was either a partner or agent of
defendant John J. Stone in the management and conduct
of the drug business at Grants Pass, and in either event
he is liable for goods purchased by her for such business
from persons having knowledge of such relationship
until notice or knowledge of the dissolution of the part-
nership or revocation of the agency has been given or
brought home to them.   In all cases of the dissolution of
a partnership, other than by operation of law, or by the
withdrawal of a dormant partner, actual or express notice
or knowledge of the dissolution, to former dealers or cus-
tomers of the firm, is essential to terminate the agency of
the partners for each other, with respect to such dealers
or customers: 17 Am. & Eng Ency. 1117 *et seq.*; *Ken-
nedy* v. *Atwater*, 77 Pa. St. 34; *Benjamin* v. *Covert*, 47 Wis.

375 (2 N. W. Rep. 625); *Wardwell* v. *Haight*, 2 Barb. 549.

So, too, where a party is shown to have been the agent of another in a particular business, and continues to act within the scope of his former authority, persons dealing with him with the knowledge and upon the faith of such former agency, and without notice of its revocation, are not affected by the termination of the agency: *Hatch* v. *Coddington*, 95 U. S. 48; *Diversy* v. *Kellog*, 44 Ill. 114; *Murphy* v. *Ottenheimer*, 84 Ill. 39; *Tier* v. *Lampson*, 35 Vt. 179.

The separation of the parties and the suit for divorce commenced by C. M. Stone against her husband would not operate to terminate her agency, either as a partner or agent as to plaintiffs, if they knew and were dealing with her on the faith of the former relationship, unless it was shown that they had express notice of such separation and divorce proceedings, or such facts were made to appear as would warrant a jury in finding that they had actual knowledge thereof. The question as to whether plaintiffs had notice or knowledge of the separation and divorce suit was not submitted to the jury, but they were in effect instructed as a matter of law that the mere separation and living apart of defendants, the suit for divorce, and exclusion of the husband from participation in the business, were sufficient to terminate the agency of the wife as to the plaintiffs, whether they had notice or knowledge thereof or not, and for this reason the cause is reversed and a new trial ordered.