H. A. HOAGLIN AND E. A. HOAGLIN v. C. M. HENDERSON & Co., Appellant.

Husband and Wife: RIGHT TO FORM PARTNERSHIP. Under the
1    statutes of this state extending the legal powers and rights of
married women, the wife may enter into a legal business part-
nership with her husband and the same is not against public
policy.

Application of Partnership Funds to Individual Debt: RECOVERY
2    OF: The fact that one member of a partnership in purchasing
goods fails to disclose that he is acting for the firm, will not
authorize the seller to apply the money paid in advance to the
satisfaction of a debt due from such member individually, and.
when such application is made the same can be recovered by
the partnership.

Counterclaim: PARTNERSHIP. A claim against one partner can-
3    not be set off against a debt due the partnership.

Partnership Claim: GARNISHMENT OF INDIVIDUAL INTEREST. The
4    individual interest of a partner in a firm debt cannot be reached
by garnishment in a court having no power to acquire juris-
diction of the partnership or determine the interests of the
partners.

*Appeal from Wapello District Court.*—HON. FRANK W.
EICHELBERGER, Judge.

THURSDAY, APRIL 9, 1903.

ACTION by plaintiffs, as a partnership doing business
under the name of H. A. Hoaglin, to recover back a sum
of money paid to defendant's agent as a part of the pur-
chase price of a bill of goods ordered of defendants through
said agent, which order the defendants refused to accept
and fill. Defendants admit that the money sued for was
paid to their agent for the purpose alleged by plaintiffs,
and that the order was never accepted or filled by defend-
ants, but allege, by way of answer, that the payment of
the money was by Hoaglin in his own right, and not while

acting as member of a partnership; that said Hoaglin was
already indebted to defendants in the sum of $271 as
balance of account due for goods previously sold and de-
livered by defendants to said Hoaglin, and that subse-
quently defendants tendered to said Hoaglin the balance
of said sum of $575, and that subsequently to the making of
such tender, and before the commencement of plaintiff's
action, defendants, who are residents of and doing busi-
ness in Chicago, in Cook county, Ill., were garnished under
an attachment sued out of the circuit court of that county
in a suit therein pending, wherein Upham, Gordon & Co.
were plaintiffs, and said H. A. Hoaglin was defendant, on a
claim of said Upham, Gordon & Co. against said H. A.
Hoaglin, to recover the sum of $525, which garnishment
proceeding was then still pending and undetermined in
said court, and that defendants gave to said H. A. Hoaglin
notice in writing of said garnishment.   This pending garn-
ishment proceeding was pleaded by defendants by way of
abatement as to any claim of plaintiffs for the recovery of
the balance of the money claimed in this action over and
above the amount of said H. A. Hoaglin's indebtedness
to defendants; that is, for the sum of $303 tendered by
defendants to said Hoaglin, and still held by defendants
for the purpose of making the tender good.   And defend-
ants ask, also, by way of equitable relief, that if it shall
be found that plaintiffs were partners, and that said sum
of $575 paid by Hoaglin to defendants' agent was partner-
ship money, then that the interest of H. A. Hoaglin as
partner therein be applied in satisfaction of defendants'
balance of account, and ask that the equitable issue thus
raised as to an accounting be transferred to the equity
side of the calendar.   This motion to transfer was over-
ruled.   Plaintiffs, by way of reply, deny the indebted-
ness alleged by defendants from H. A. Hoaglin to defend-
ants on balance of account.   On trial to a jury, verdict was

rendered for plaintiffs for the amount sued for, and from a judgment on such verdict defendants appeal.—*Affirmed.*

*Geo. F. Heindel* and *McNett & Tisdale* for appellants.

*A. W. Enoch* and *Work & Work* for appellees.

McCLAIN, J.—The nature of the controversy involved in this case, and the questions of law arising therein, will be better understood from a brief narrative of the facts as shown in the evidence: H. A. Hoaglin had been engaged in business at Mt. Pleasant, and in January, 1900, sold out his business, receiving therefor a sum in cash entirely insufficient to pay the indebtedness contracted by him in conducting his business. Being without other property or resources, he proceeded to settle with his creditors, who were pressing for payment of their respective claims, by paying to each a portion of the indebtedness, taking receipts in full for the respective claims. It does not appear that these settlements were made on any uniform basis, or in pursuance of any agreement for composition with creditors. In some instances about one-third of the claims were paid, in other instances more. One of these creditors was the defendant firm, and through their attorney they accepted one-third of their claim, and receipted in full for the entire amount. Thereupon H. A. Hoaglin, with his wife, who had previously been conducting a millinery business in her own name in connection with the business carried on by H. A. Hoaglin, removed to Ottumwa, and, as it is contended, entered into a contract to carry on a partnership business under the name of H. A. Hoaglin. This alleged firm was without other assets than $250 of the wife's money, and $500 borrowed by husband and wife on their joint note from the wife's sister. With this sum of money in hand, H. A. Hoaglin, without disclosing the fact that he was acting as member of the alleged firm, or that his acts were done otherwise than in his individual capacity, ordered through one Meados,

the traveling agent for defendant firm, a bill of goods amounting to $1,000, paying $575 by draft delivered to said Meades, and proj osing to pay the balance on time. The order contemplated the immediate shipment of the goods from defendants' place of business, in Chicago, to H. A. Hoaglin, at Ottumwa.    Meades, having no authority to accept an order, forwarded the order to defendants for acceptance and approval, accompanied by the draft, whereupon defendants refused to accept the order, and notified Hoaglin that they would retain so much of the money as was necessary to satisfy the balance of their previous indebtedness against him, and would pay over to him, or furnish him goods for the surplus.    Thereupon Hoaglin and wife, suing as partners, brought this action to recover from defendants the amount of money represented by the draft delivered by Hoaglin to Meades for defendants, and appropriated by defendants to their own use.    The suit, as originally brought, was by attachment, and notice was by publication, but defendants entered an appearance and secured the dismissal of the attachment by giving bond to pay the amount of any judgment rendered.

The case was presented to the jury in the lower court on the theory that if the evidence showed Hoaglin and wife to have been partners, and the money paid by Hoaglin to Meades to have been partnership funds, then the attempted application by defendants of the money received through Meades to the satisfaction of the individual debt of Hoaglin was improper, and plaintiffs, as partners, were entitled to recover the entire amount so paid; and counsel for appellants present the question whether husband and wife can be partners, contending that there was no lawful partnership, and that the money paid by Hoaglin was his own money, out of which defendants had a right to recoup themselves to the extent of Hoaglin's previous indebtedess to them.    We shall not stop to consider the question whether the acceptance by

defendants from Hoaglin of a part of his previous indebtedness, under the agreement that the entire indebtedness should thereby be discharged, constituted an accord and satisfaction, but shall proceed at once 'to determine whether a legal partnership between husband and wife can exist in this state.

I.   The common law rule that married women cannot enter into a contract of partnership seems to be based on their incapacity at common law to contract for any purpose.   Collyer on Partnership (5th Am. Ed.) section 15; Parsons on Partnershp, section 19; *Weisiger v. Wood*, 36 S. C. 424 (15 S. E. Rep. 597); *De Graun v. Jones*, 23 Fla. 83 (6 South. Rep. 925).   The power of a married woman to enter into a contract of partnership, if it exists at all in any of the states in which the common law system prevails, must depend upon statutory authority; and in several cases the question has been considered as to whether particular statutory enlargements of the powers of married women as to contracting and managing their separate property have rendered them competent to enter into partnership relations.   Thus it has been held that authority to acquire, hold, and dispose of property as a separate estate will sustain a contract of partnership made by a married women with a person other than her husband.   *Abbott v. Jackson*, 43 Ark. 212.   And undoubtedly the general power to contract which is conferred upon married women in some states would support a contract of partnership. But on the question whether the statutes extending the powers of married women with reference to the making of contracts and the ownership and disposition of separate property confer the power to enter into the relation of a business partnership with the husband, the courts seem to be somewhat at variance, not only on account of differences in terms of the statutes in which the power is conferred, but also on account of differences of opinion as to the bearing

1. HUSBAND
and wife's
right to form
partnership.

of rules of public policy.   In Massachusetts it is said that authority to buy and sell and enter into contract with reference to her personal property, to carry on trade, and to sue and be sued, does not involve power to enter into a partnership with the husband.   *Lord v. Parker*, 3 Allen, 127.   To the same effect in states where the statutes give a married women the right to control and contract with reference to her property, see *Payne v. Thompson*, 44 Ohio St. 192 (5 N. E. Rep. 654); *Fuller v. McHenry*, 83 Wis. 573 (53 N. W. Rep. 896, 18 L. R. A. 512); *Haas v. Shaw*, 91 Ind. 384 (46 Am. Rep. 607); *Artman v. Ferguson*, 73 Mich. 146 (40 N. W. Rep. 907, 2 L. R. A. 343, 16 Am. St. Rep. 572); *Gwynn v. Gwynn*, 27 S. C. 525 (4 S. E. Rep. 229); *Gilkerson-Sloss Commission Co. v. Salinger*, 56 Ark. 294 (19 S. W. Rep. 747, 16 L. R. A. 526, 35 Am. St. Rep. 105).   In other states, statutes to substantially the same effect have been held to so far enlarge the legal capacity of a married women as to authorize her not only to enter into a partnership contract in general, but specifically to enter into such contract with her husband.   *Toof v. Brewer*, (Miss.) 3 South. Rep. 571; *Suau v. Caffe*, 122 N. Y. 308 (25 N. E. Rep. 488, 9 L. R. A. 593).   It has been held, however, that where the statutes not only confer the right to own and contract with reference to her separate property, but also the general power to contract, the wife may not only enter into business partnership relations in general, but also specifically with her own husband, and this is said not to be contrary to any dictate of public policy.   *Burney v. Savannah Grocery Co.*, 98 Ga. 711 (25 S. E. Rep. 915, 58 Am. St. Rep. 342); *Lane v. Bishop*, 65 Vt. 575 (27 Atl. Rep. 499).   And see *Bernard, etc., Co. v. Calvin*, 12 C. C. A. 123 (64 Fed. Rep. 309).

The question of public policy involved in these statutory enlargements of the powers and liabilities of married women must be determined with reference to the general tenor of the statutory provisions on the subject as they

are found in the different states. In this state under the provisions of Code, sections 3153, 3164, which give to married women the right to acquire, own, and dispose of property in the same manner and to the same extent as their husbands may do, and to make contracts and incur liabilities which may be enforced by or against them to the same extent and in the same manner as if they were unmarried, it is not open to question that a wife may become surety for her husband and be liable generally on such contract of suretyship, may become the general creditor of her husband, may be joint owner of property with him, and may be his agent, or may make him her agent, in the transaction of business. Citation of authorities to support these propositions would be wholly unnecessary. These unquestioned powers of a married woman in this state to deal with her husband would seem to cover all the powers and liabilities involved in entering into or continuing the relation of partner with her husband. The essential characteristics of a partnership seem to be joint ownership of property, and authority of each partner to bind the other by his acts with reference to the partnership property, and also to impose upon the other partnership liability. As these relations may be separately sustained between husband and wife, we see no reason why they may not be collectively created by entering into and carrying on the relation involved in the formation of the entity known as a partnership.

The only objection which occurs to us is that involved in the denial of the capacity of husband or wife to maintain a suit in a court of law or equity against the other, except as such power is expressly conferred, as decided in *Heacock v. Heacock*, 108 Iowa, 540, in which we have held that the relations of husband and wife to each other are such as to preclude a suit by the one against the other for breach of contract or for tort, unless it be for the preservation or protection of the separate property; and it is

argued that this inability of the wife to sue the husband would preclude the existence of a business partnership arrangement between them. But we do not think that the conclusion follows. The same argument would lead to the result that a valid contract cannot be made between them, such as a contract for the repayment of money advanced by one to the other; and yet, as we have suggested, that is not the law of this state, and there is no intimation in the *Heacock Case* that it was intended by that decision to declare that such contracts are necessarily invalid. It, no doubt, might at one time have been reasonably argued that, inasmuch as a right of action by the wife against the husband was denied to her, she was not competent to voluntarily enter into contract or joint property relations with him, such as would involve for their protection a general right to sue. But the time for that argument is past. The right to contract with the husband is now so well established that it would be inexcusable to say that its existence is negatived by a holding that public policy forbids a suit by the wife against the husband on account thereof. It may well be suggested, also, that there is express authority for a suit by the wife against the husband to recover her property, or any right growing out of the same (Code, section 3155), and therefore that, as the wife may at any time terminate any business partnership relation which may exist with her husband, and thereby become practically a joint owner only with him in the partnership property, there would seem to be no impossibility of sustaining an action by her against him for any right growing out of their joint ownership. In short, we think that, in view of the statutory provisions extending the legal powers and rights of married women, we cannot say that there is any public policy recognized in this state which precludes the existence of a business partnership relation between husband and wife. None of the cases holding that such relation cannot exist are applicable to a

condition of affairs as to the wife's capacity to make general contracts, and own and control her own property, such as exists in this state, except that of *Board of Trade v. Hayden*, 4 Wash. 263 (30 Pac. Rep. 87, 32 Pac. Rep. 224, 16 L. R. A. 530, 31 Am. St. Rep. 919); and *Haggett v. Hurley*, 91 Me. 542 (40 Atl. Rep. 561, 41 L. R. A. 362), and we find ourselves unable to indorse the views expressed in these cases. Our conclusions find support not only in the cases already cited, but also in *Belser v. Tuscumbia Banking Co.*, 105 Ala. 514 (17 South. Rep. 40); *Schlapback v. Long*, 90 Ala. 525 (8 South. Rep. 113); *Fuller v. Ferguson*, 26 Cal. 546; *In re Kinkead*, 3 Biss. 405 (Fed. Cas. No. 7,824); *Clark v. Hezekiah*, (D. C.) 24 Fed. Rep. 663; *Snell v. Stone*, 23 Or. 327 (31 Pac. Rep. 663).

II. Counsel for appellants argue that as Hoaglin, in dealing with defendants' agent, Meades, did not disclose the fact of partnership, and both Meades and his princi-

2. APPLICATION of partnership funds to individual debt: recovery of.

pals were justified in assuming that the transaction was in his own name and right, the plaintiffs, as partners, cannot occupy any different position from that which Hoaglin would have occupied, had he acted for himself. But it will be noticed that Hoaglin had no occasion to disclose the partnership. The transaction would have been perfectly valid and regular, and the goods purchased would have been the goods of the partnership, had they been shipped in accordance with the contract which Hoaglin made, for the fact of partnership is established by the verdict of the jury, and no wrong or fraud was perpetrated or intended, so far as the evidence shows, in the transaction between Hoaglin and Meades. Defendants have not been placed in any worse position, or in any way prejudiced, by lack of knowledge that Hoaglin was acting for the partnership. Had they accepted the order, and in good faith carried out the arrangements made between Hoaglin and Meades, they would have been in no way prejudiced,

but would have acquired all the rights that it was intended they should acquire under that transaction. When they attempted to keep the money received by them, as Hoaglin's individual money, and to apply it to a wholly different purpose from that for which it was paid to them, they took their chances of being able to establish the fact; and if the money in fact belonged to a partnership, or to any other party, they must abide by the consequences.

III.   Defendants, then, have no claim on the money received by them from Hoaglin as partner, unless it is competent, in an action by the partnership to recover a partnership claim, for the debtor to set off a claim which he holds against an individual member of the partnership. It has been held by this court that, in an action by a member of a partnership for an indebtedness due to him individually, the debtor may set off a claim against the partnership. *Allen v. Maddox*, 40 Iowa, 124. But there is no case in this court in which it has been held conversely that a claim against a partner can be set off against an indebtedness due to the partnership. It is true that under some circumstances a partner may apply partnership money to the payment of his own debt. *Dob v. Halsey*, 16 Johns. 34 (8 Am. Dec. 293); *Babcock v. Standish* 53 N. J. Err. & App. 376 (33 Atl. Rep. 385, 30 L. R. A. 604, 51 Am. St. Rep. 633). But certainly there is no rule of law by which he can be compelled to do so. To determine what interest Hoaglin, as a partner, had in the money paid by him as partnership money to the defendants, would involve a settlement and winding up of the partnership affairs. It certainly cannot be true that, whenever suit is brought on a partnership claim, the debtor, on the ground that he has a claim against the individual member of the partnership, can bring the partnership into a court of equity to be wound up, and to have the interest of each partner in each item of its property determined.

*3. COUNTER-CLAIM: partnership.*

Moreover, the statute regulating counterclaims (Code, section 3570) requires that any new matter constituting a cause of action in favor of the defendant against the plaintiff, not arising out of the contract or transaction set forth in the petition, must, to be available as a counterclaim, be in favor of all the defendants, if more than one, and against all the plaintiffs, if more than one, and that description does not fit this alleged counterclaim.

IV. Something is claimed in behalf of defendants on account of a garnishment proceeding in Illinois, in which it was sought to hold defendants as debtors of Hoaglin. What is said in the preceding paragraph will dispose of this contention. Defendants were not debtors of Hoaglin, but of the firm composed of Hoaglin and his wife; and it would be manifestly absurd to contend that Hoaglin's individual interest in this indebtedness due to the firm could be reached in a court having no power to acquire jurisdiction of the partnership, or determine the interest of one partner in the partnership claim. *Winston v. Ewing*, 1 Ala. 129 (34 Am. Dec. 768); *Sheedy v. Second National Bank*, 62 Mo. 17 (21 Am. Rep. 407); *Myers v. Smith*, 2 Ohio St. 120; 2 Bates, Partnership, section 1103.

*4. PARTNER-SHIP claim: garnishment of individual interest.*

As to defendants' counterclaim, and also the defense made by reason of this alleged garnishment, it may be suggested that the only method provided by statute for reaching the individual interest of a partner in satisfaction of a debt due by him is pointed out by Code, sections 3904, 3977, 3978, which authorize the levy of an attachment or an execution by equitable proceedings to ascertain the nature and extent of such interest. There was in this c ase no attachment or execution against Hoaglin individually, and therefore there was no opportunity for applying the provisions of these sections.

After considering all the questions raised in behalf of appellant , we reach the conclusion that the judgment of the trial court should be AFFIRMED.