SHAW, Banking Com'r, v. CENTERFIELD OIL CO. et al. (Motion No. 6581; No. 7272.)

Court of Civil Appeals of Texas. Austin. Sept. 19, 1928.

Rehearing Denied Oct. 10, 1928.

L. C. Sutton and Jno. W. Goodwin, both of Austin, for appellant.

McCLENDON, C. J.  This is a suit to establish a claim of the Centerfield Oil Company, "a joint-stock association organized and operating as such under what is commonly known and called a written trustees' agreement," as an unsecured, noninterest-bearing checking account and deposit in the Lometa State Bank, closed by the banking commissioner, and, as such, as payable out of the guaranty fund.  The suit was brought by Centerfield Oil Company, acting through its trustees, F. E. Bedecheck and Frank Ezzell, also by Bedecheck and two others who were stockholders in the oil company; the petition alleging:

"This suit is brought in the name of Centerfield Oil Company by said stockholders in their name and for their use and benefit, and for the use and benefit of all other shareholders and stockholders in said Centerfield Oil Company."

The judgment upon trial before the court without a jury was in favor of "plaintiff," establishing and classifying the claim as prayed for.  The banking commissioner has appealed.

Before considering the merits of the case, we will dispose of two questions of practice raised by appellant:  (1) A suggestion that the judgment is not final because it does not dispose of the interests of all plaintiffs; and, (2) that since the oil company was a partnership, all shareholders were necessary parties.

While it is true that the named shareholders were parties plaintiff to the suit, it is clear from the above quotation from the petition that the suit was brought by them for the benefit of the oil company.  But one cause of action was alleged, that of having the claim established and classified as one of the oil company; and we think the judgment of the court in the light of the pleadings in effect establishes and classifies the claim as that of plaintiff company.

The contention that other shareholders were necessary parties plaintiff is overruled.  Article 6133, R. S. 1925, provides that any unincorporated joint-stock company or association "may sue or be sued in any court of this state having jurisdiction of the subject-matter in its company or distinguishing name; and it shall not be necessary to make the individual stockholders or members thereof parties to the suit."

Upon the merits of the case appellant pleaded two defenses: First, it admitted that the oil company had had a deposit of $2,000 in the Lometa bank, but alleged that prior to the closing of the bank the account was transferred to Frank Ezzell, who was then president of the oil company, who, after the transfer to his account, withdrew the deposit from the bank; and, second, in the alternative, that Ezzell was the owner of 236 of the 300 shares of stock of the oil company; that he got the benefit of the deposit through withdrawals under his personal account, and the oil company could therefore recover only 44/300 thereof, which was the interest of the other shareholders in the oil company.

The evidence will warrant the following findings in support of the judgment:

Early in 1922 the oil company made four deposits in the bank of $500 each.  At that time Ezzell had an individual account with the bank.  There was some question whether the oil company's deposit had been reduced to $1,900; but as plaintiffs made no claim in this regard, we will treat the deposit as having been so reduced.  On several dates during 1922 the bank made transfers from the oil company's account to the individual account of Ezzell.  These transfers, five in number, aggregated $1,900 and balanced the account.  Ezzell's account showed these transfers as deposits, and also showed that his personal account had in December, 1922, been reduced to $145.61.  On January 27, 1925, a ledger account was opened up on the books of the

bank in favor of the oil company, beginning with a credit of $1,900. Several checks were drawn on this account, which reduced it to $1,543, the amount of the claim. Ezzell testified that the transfers from the oil company's to his individual account were never authorized and were not known to him until some time later; that he had tried for about two years to get a statement of his account, but was unable to do so, and did not know that his account was overdrawn; that he had at one time offered to loan the oil company's money to one of the officials of the Lometa bank, a relative of his, provided arrangements could be made to repay in 60 days, but this offer was not accepted, and at one time offered to permit the bank to withdraw his share in the oil company's deposit, provided the share of the other stockholders was left intact, but that this offer was never accepted. He continued to protest against the transfer, and finally the bank agreed to and did reinstate the oil company's account. The testimony of the bank examiner was to the effect that the books of the bank were in very bad shape, and that very little could be told about them on account of various manipulations of one of the officers. It appears that among the assets was a note of Ezzell's for some $4,800. This Ezzell testified was merely a blanket note and did not represent his true indebtedness to the bank, which he claimed to be a great deal less. The claim of the oil company was presented to the banking commissioner, but was denied, and later the personal indebtedness of Ezzell was adjusted with the banking commissioner.

Appellant bases its contention that Ezzell consented to the transfers from the oil company's to his own account on a quotation from a letter written by Ezzell to his sister, the wife of one of the bank officials, on November 16, 1923, reading:

"* * * Did propose to let them have my part of the company money, but always protested against them taking the other stockholders' part."

Ezzell explained this quotation by stating that it was merely in the form of a proposition which was never accepted, and strenuously denied that he ever gave his consent to the transfer of the oil company's account to his own, either in whole or in part. Other statements in this letter are corroborative of Ezzell's testimony that the transfer was unauthorized. We are not asked to review the weight of the evidence, and the questions presented are solely of law. We hold the evidence sufficient to support a finding that the transfer was wholly without authority.

The following rules of law control the questions raised:

1. A bank has no lien upon the deposit of a partnership for a balance due by one of the partners. Therefore the transfers from the oil company's to Ezzell's account, being without authorization or ratification, were ineffectual. See 7 C. J. pp. 569, 570, and cases cited.

2. The same principle denies the right of set-off where claims of the partnership are in suit. See Austin v. Blair (Tex. Civ. App.) 2 S.W.(2d) 1017.

3. Where set-off is allowed in equity, a partnership accounting with all partners parties is essential in order to adjudicate the interest of the individual partner involved. Hoaglin v. Henderson, 119 Iowa, 720, 94 N. W. 247, 61 L. R. A. 756, 97 Am. St. Rep. 335.

There was no claim that Ezzell was insolvent, and no equitable grounds supporting the right of set-off asserted. Additionally, it was not disputed that Ezzell's individual debt to the bank had been settled.

The trial court's judgment is affirmed.

### On Motion for Rehearing.

The correctness of the following quotation from our original opinion is questioned by appellant in his motion for new trial: "We are not asked to review the weight of the evidence, and the questions presented are solely of law."

The motion points out certain arguments in appellant's brief which, it is suggested, we "must have entirely overlooked." In stating that we were not asked to review the weight of the evidence, it is manifest that we meant that the question of the weight of the evidence was not raised or involved in the appeal.

The Courts of Civil Appeals are given jurisdiction to set aside a judgment of the trial court on the facts, and these courts have exercised this jurisdiction, when, in their judgment the evidence, though sufficient as a matter of law to sustain the judgment, so manifestly preponderated against it as to require a new trial in the interest of justice. Jurisdiction in this regard is wholly distinct from that jurisdiction which both the Courts of Civil Appeals and the Supreme Court have to set aside a judgment where as a matter of law the evidence is not sufficient to support it. In order to invoke the jurisdiction upon either of these grounds, it is essential to assign error.

An assignment of error which attacks the trial court's judgment because it is against the law and the evidence, or is not supported by the evidence, merely invokes the jurisdiction of the appellate court upon the sufficiency of the evidence as a matter of law to sustain the judgment; and the only issue thus presented is whether there is evidence of any probative force which will support the judgment. Such assignment does not invoke the jurisdiction of the Court of Civil Appeals to weigh the evidence from the viewpoint of its preponderating effect as distinguished from its probative force as a matter of law.

Marks v. Sambrano (Tex. Civ. App.) 170 S. W. 546.

Appellant's assignments of error (Nos. 3, 4, 5, and 6) do not raise the issue of the preponderance or weight of the evidence, but at most question the correctness of the court's judgment as having support in the evidence. This is the basis for our above-quoted statement that we were not asked to review the weight of the evidence, and that the questions presented are solely of law.

We might add in this connection that none of the assignments of error are, under Courts of Civil Appeals Rule No. 32, entitled to consideration, for the reason that they are nowhere copied in appellant's brief. See Wright v. Maddox (Tex. Civ. App.) 286 S. W. 607.

The motion is overruled.