PLATTSMOUTH STATE BANK, APPELLEE, V. JOHN BAUER & COMPANY ET AL., APPELLANTS: LOUISA BAUER, INTERVENER, APPELLANT.

274 N. W. 204

FILED JUNE 18, 1937. No. 30038.

*Hotz & Hotz*, for appellants.

*A. L. Tidd, contra.*

Heard before ROSE, DAY, PAINE and CARTER, JJ., and HASTINGS, MUNDAY and RINE, District Judges.

CARTER, J.

This is an action on two promissory notes signed by John Bauer & Company, a partnership consisting of John Bauer and Emma Bauer Egenberger. The defendant Emma Bauer Egenberger pleaded that she was a married woman and that as such her separate estate was not liable for the debts of the partnership. The trial court found against Emma Bauer Egenberger and entered judgment against her for the full amount of the notes. From the overruling of her motion for a new trial, Emma Bauer Egenberger appeals.

The record further discloses that Louisa Bauer, mother of Emma Bauer Egenberger, intervened in the action and claimed ownership of eight shares of stock in the plaintiff bank by purchase from Emma Bauer Egenberger. The bank claimed a prior lien on the stock by virtue of a by-law of the banking corporation giving the bank a lien on the stock of any stockholder who was indebted to the bank. The trial court found against Louisa Bauer and adjudged the bank to be entitled to a lien on the stock for the amount owing by Emma Bauer Egenberger. From the overruling of her motion for a new trial, Louisa Bauer appeals.

The evidence shows that from 1902 until 1919 John Bauer, defendant herein, and his father, John Bauer, Sr., had engaged in a partnership business under the name of John Bauer & Son. It further shows that in 1919 John Bauer, Sr., died and that Emma Bauer Egenberger, his daughter, succeeded to his interest in the business, the partnership continuing under the name of John Bauer & Company. At the date of the death of John Bauer, Sr., the

partnership was indebted to plaintiff bank in the amount of $5,000 or $6,000. On December 29, 1930, the indebtedness was renewed by giving the notes sued upon, signed "John Bauer & Co. by John Bauer. (Signed) John Bauer." Emma Bauer Egenberger admits that she was a member of the partnership on the date the notes in suit were signed and continued as such partner until she withdrew from the partnership on November 1, 1932. It is the contention of Emma Bauer Egenberger that she did not sign the notes or authorize her partner to bind her separate estate for their payment. The evidence clearly shows that after November 1, 1932, there was nothing left of the partnership except debts. The question to be determined is whether, under these circumstances, Emma Bauer Egenberger is liable on the notes.

The statutes applicable to this case are: "A married woman, while the marriage relation subsists, may bargain, sell and convey her real and personal property, and enter into any contract with reference to the same in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property." Comp. St. 1929, sec. 42-202. "Any married woman may carry on trade or business, and perform any labor or services on her sole and separate account; and the earnings of any married woman, from her trade, business, labor, or services, shall be her sole and separate property, and may be used and invested by her in her own name." Comp. St. 1929, sec. 42-203.

It is apparent from the foregoing statutory provisions that a married woman may carry on a business in her own name. In so doing she may appoint agents who may make contracts for her and in her name. We fail to see any reason why these statutes should be interpreted as restrictive of her rights to enter a firm as a partner and thus bind her separate property for such firm's undertakings, as partners in a firm are the agents of each other, in the transaction of partnership affairs and it is conferring no more power upon the partner to bind the sole and separate

property of a married woman than such married woman would have the right to contract for through any other agency. In *Vail v. Winterstein,* 94 Mich. 230, 53 N. W. 932, the court said: "We think the great weight of authority under statutes quite similar to our own is that married women, while incompetent to enter into partnership engagements with their husbands, are free to enter into partnership relations with third parties, and bind their separate properties as fully and to the same extent as they might do through any other agency where they carry on business upon their sole and separate accounts." See, also, *Hoaglin v. Henderson & Co.,* 119 Ia. 720, 94 N. W. 247.

The reason for the rule is well stated by a text-writer as follows: "If the legislature has conferred upon the married woman the full, complete, and free power to carry on a separate trade or business, that seems to carry with it, by necessary implication of law, the right to conduct such business upon the same principles, the same system, in the same manner, to the same extent, and at her own option, as fully and freely as any other person, and to say that she cannot form a partnership, would be to deny her a valuable right in business relations, which is allowed to other persons. It will not do to say, that she is a sole trader with all the power in relation to her trade and business, that she would have if a *feme sole,* unless she has the liberty to exercise an unrestricted option as to the mode of carrying on such business, provided there be no fraud perpetrated on others. It has been insisted by some that if she forms a partnership she becomes, by that relation, liable as a partner, and is bound by the debts, either contracted by herself or another member of the firm, and this would often subject her property to the debts and liabilities of another person. But I can see no good reason consistent with the full power as a sale (sole) trader, why she should not enter into a partnership in business, if she thinks her separate interests would be promoted thereby." Harris, Contracts Married Women, 420, sec. 511. See, also, 1 Bates, Partnership, sec. 136.

We necessarily conclude that, when Emma Bauer Egenberger became a member of the partnership, she was engaged in her own trade and business. It would naturally follow that the obligations of the partnership upon which she was personally liable were made with reference to her separate trade and business. The trial court therefore did not err in entering judgment against her on the notes sued upon.

The record shows that Louisa Bauer filed a petition in intervention claiming that she was the owner of eight shares of stock in the Plattsmouth State Bank by purchase from her daughter, Emma Bauer Egenberger, upon which the bank was given a lien by the trial court to secure the payment of its judgment against Emma Bauer Egenberger. It appears that on October 2, 1922, Emma Bauer Egenberger purchased the stock from John F. Gorder, another stockholder, and took an assignment in her own name. It further appears that in 1931 Emma Bauer Egenberger owed the bank $750 on a note upon which the stock was pledged as collateral security. Being unable to pay the note, she sold the stock to Louisa Bauer for $780 which she used to pay off the note she owed the bank. The officers of the bank knew that the note was paid with funds obtained from Louisa Bauer. Thereafter the stock was presented at the bank for transfer to Louisa Bauer upon the books of the corporation. The officers of the bank refused to make the transfer for the reason that the by-laws of the bank prevented a transfer of stock of the bank by a stockholder who was indebted to the bank and have since claimed a lien upon the stock for the payment of the partnership indebtedness owing by Emma Bauer Egenberger.

The part of the by-law in question that is material to this case is as follows: "This bank shall have a lien on the stock of each and every stockholder who is indebted to this bank for said indebtedness and for any and all indebtedness hereafter incurred and that no certificate of capital stock of this bank shall be transferable on the books of this

bank until the indebtedness of the holder of such certificate of stock has been fully satisfied, and paid."

There is no provision of statute in this state creating a lien upon this stock. Neither do the articles of incorporation of the Plattsmouth State Bank provide for one. The stock certificate itself gives no notice of any such lien. The claim of the bank is necessarily based upon the provisions of the by-law alone.

An authoritative text-writer states the applicable rule as follows: "In the absence of statutory prohibition a lien may be created or reserved by by-law but binds only such persons as have actual notice or are charged with notice of the by-laws, such as stockholders, directors and transferees having or being chargeable with notice; transferees without actual notice and to whom constructive notice cannot be imputed and who take the legal title to the shares are not bound." 8 Fletcher, Cyclopedia Corporations, sec. 4207.

In *Braden v. Sullivan County Bank,* 251 S. W. (Mo. App.) 754, the court in a like case said:

"It is clear that the only ground upon which defendant claims a lien upon the stock is by virtue of the by-law passed long before Muncy became obligated in any way to the bank. Nothing was ever thereafter done to create the lien claimed. * * *

"So that this prior by-law cannot *ipso facto* create a lien upon said stock which is good against the world. Under this statute, the bank had no right to make a loan to Muncy, or to accept him as security on the coal company's notes, on the faith or strength of the by-law. And, without regard to what it might or might not have subsequently done under the by-law 'to prevent loss upon a debt previously contracted in good faith' (on which we make no intimation), it is certain that it did nothing to create a lien nor even to assert one until after whatever rights plaintiff obtained had attached. Indeed, it does not appear that in the bank's suit on its notes any attempt was therein made to assert such lien or to subject the notes to it. Unless authorized so to do by law, a corporation cannot in its by-

laws impose restrictions upon the transfer of its stock, and as there is no law conferring such power on banks, the by-law relied upon is powerless to prevent a transfer. * * * Whatever force or validity the by-law may have had as a contractual obligation solely as between the bank and Muncy where no rights of a third party are involved, it certainly could have no effect upon the rights of a transferee of said stock who obtained same without notice thereof."

In the case at bar, the record does not show that Louisa Bauer had any actual knowledge of this by-law. Neither is it such a case that constructive notice may be imputed. In the instant case, Louisa Bauer not only parted with $780 to obtain the stock, but the bank received the money in payment of the note for which the stock was then pledged as collateral. It would be a harsh rule that would permit the bank to accept the purchase money advanced by a third party to extinguish the debt for which the stock was pledged and then permit the bank to retain the stock as security on some other indebtedness and leave the innocent third party empty-handed. It is not contended by the bank that there was any fraud perpetrated or that there was not a sufficient consideration to sustain the transfer. The by-law in question is nothing more than a contractual relation between the corporation and its stockholders and totally ineffective for any purpose upon the rights of a third person who purchases without notice.

We conclude that the trial court erred in granting the bank a lien on this stock, and that part of the judgment is reversed and the cause is remanded, with instructions to enter a judgment in accordance with the prayer of intervener's petition in intervention.

AFFIRMED IN PART AND REVERSED IN PART.