D. S. JONES, EXECUTOR ESTATE OF B. L. JONES, DECEASED, ET AL. *v.* MRS. M. V. JONES.

[55 South. 361.]

1. EQUITY. *Bill. Multifariousness. Husband and wife. Partners. General demurrer. Code* 1906, *section* 2517.

Where a bill in chancery by the widow against the executor of her deceased husband charged that at the time of her marriage, her deceased husband was the manager of her plantation and that the plantation business and all other business conducted by her husband was a partnership business in which she equally shared and that all of the earnings of her husband comprising his entire estate were partnership property and owned jointly by her husband and herself in accordance with a partnership agreement between them, made after their marriage, that her husband made a will which she renounced. The prayer of the bill was for an accounting of all the

business transactions had by the husband during the period of their married life, embracing numerous business enterprises in which her husband ventured in his own name and various partnerships and corporations in which her husband was interested, and that certificates of stock in such corporations held in the name of decedent, be declared partnership property and that an accounting be made of all expenditures and improvements and that the rights of the parties be fixed. *Held* that the bill was not multifarious.

2. CODE 1906, *Section* 2517. *Disabilities of coverture. Partnership.*

Since under Code of 1906, section 2517, all of the disabilities of coverture have been removed, a married woman may lawfully enter into a partnership with her husband.

3. GENERAL DEMURRER. *Equity pleading.*

Grounds of demurrer which do not go to the whole bill cannot be considered on the hearing of a general demurrer to the bill.

APPEAL from the chancery court of Leflore county.

HON. M. E. DENTON, Chancellor.

Suit by Mrs. M. V. Jones against D. S. Jones, executor of the estate of B. L. Jones, deceased et al. From a judgment overruling a demurrer to the bill, defendant appeals.

The facts are as follows:

This suit was begun by the appellee, who was complainant in the court below, against the appellant, the executor of the estate of complainants deceased husband. The appellee alleges that the complainant married B. L. Jones many years ago, and at the time of their marriage he was manager of her plantation; she being a woman of considerable means. She alleges that the plantation business, mercantile business, and various other enteprises engaged in by her husband were conducted as a partnership business, in which she and her husband equally shared, and that all of the earnings of her husband, which comprised his vast estate at the time of his death, were in truth partnership property, being owned jointly by herself and husband in accordance with their partnership agreement, entered into soon after they married.

The declaration further sets up that under the will of her husband he bequeaths to her one-half of the cash on hand, and divides the balance of his estate among his own brothers and sisters; the will itself reciting the complainant has a separate estate equal to that of the decedent, giving this as his reason for bequeathing his property to members of his own family; that complainant, as his widow, renounced the will and elected to take her share, one-half of the estate, there being no living children from the union. The prayer of the bill is for an accounting of all the business transactions had by the defendant during the period of their married life, embracing numerous business enterprises in which the decedent ventured in his own name ,and various partnerships and corporations in which the decedent was interested, and prayed that certificates of stock in such corporations, held in the name of said decedent, be declared the partnership property, and that an accounting be made of all expenditures and improvements of various plantation properties, and the rights of all parties interested be fixed. The demurrer filed by the executor raised two questions: (1) That it was multifarious; (2) that the wife had no right to enter into a partnership agreement with her husband. The court overruled the demurrer, and the executor appeals.

*Coleman & McClurg,* for appellants.

"The uniting in one bill of several distinct and unconnected matters against the same defendants shall not be an objection to the bill." Code, 598. This means, of course, that the uniting of several distinct and unconnected matters against several distinct and unconnected defendants as to distinct and unconnected matters, is an objection to the bill.

Recalling that there are four separate and distinct complainants although in one person, against twelve distinct and diverse persons and corporations as defend-

ants, and innumerable subject-matters alleged against each of them, some jointly and some severally, we take up the tedious task of shortly briefing the complaint.

Paragraph 1 of the bill:

The first issue tendered by the bill is that Highland plantation was well stocked with a large number of mules, horses, cattle, wagons, agricultural implements, and a large quantity of corn, cottonseed and other agricultural products, sufficient for the cultivation of said plantation, and other personal property, such as is usually found on a plantation of that size. This allegation is addressed to the executor; what other defendant has any interest in it? All of the brothers and sisters, and all the other defendants, were then (1876) third persons as to those allegations relating to matters thirty-three years old. So as to the three thousand dollars insurance collected on the death of her husband mentioned as an inducement to what follows. This is also a subject of controversy with the executor alone. Both matters are disconnected with the interests of all other defendants. They had no knowledge of these things, nor could their interest be affected thereby. There were no written articles of co-partnership as to any of these matters.

Paragraph eleven of the bill:

(3) The issues tendered therein are subjects of dispute by the executor, representing the dead husband. That two thousand acres of Highland was in a high state of cultivation, and completely equipped as a cotton plantation, thoroughly ditched and drained, with improvements of residence, gin-house, mill, barns, stables, tenant houses, cotton houses, fences, etc., is made a material allegation to be answered by the executor alone, since the other defendants know nothing of it and are not concerned about it now.

(4) The employment of B. L. Jones in April, 1877, for five hundred dollars and for 1878 for eight hundred dollars is a charge that all of defendants are not con-

nected with, yet it is forceful in view of the following charges to be answered by the representative executor alone. And so, as to the profitable crops of 1877 and 1878 the exact amount of the profits, it need be noted, is not stated. Then, how can all the defendants be called upon to join in answer to these important charges that lay the foundation for this case? This basis matter, as it is alleged in the bill, is immaterial with all, except, possibly, the executor, who "stands in the shoes" of him against whom they are aimed, the dead man.

(5) The bill then invites an investigation of the entire Highland plantation up to the marriage in December, 1878. Then the co-partnership and lease thereafter, to the death of Ben L. Jones in August, 1908.

(6) The fifth clause of paragraph 4 of the bill declares that the business on Highland plantation during all these years (thirty-three) resulted "in large income to the co-partnership, which said income is the foundation upon which has been built the great accumulation of property and money owned by said co-partnership to the death of said Ben L. Jones, and the source from which all the wealth of said partnership was derived." That, otherwise, Ben L. Jones was a financial pauper. The truth of these allegations are to be tested by the executor alone; in no sense are all of these defendants called upon to answer them.

(7) The sixth clause of paragraph 4 discloses the instability of the complaint in that, it calls all the defendants into court and there tells them, "it is impossible to set out in detail the multitude of transactions in which the said partnership was engaged, but the same will necessarily enter into the accounting." Now, then, take care of yourselves without further notice? Who can defend such indefinite charges?

This honorable court, we think, will quickly catch the idea that we cannot follow this bill, and its amendment, in even a reasonable synopsis, without much repetition

to the annoyance of the court.  Yet, in duty bound, we ask the court to notice as it pursues the record that the complainant in the latter part of paragraph 4 lauds herself as having contributed "in a large measure to the phenomenal success and accumulations which resulted from the partnership operations and investments." Then she reiterates the pauperism of her plantation manager whom she condescended to marry after the two years of his extraordinary success in the control of her affairs. Then begins the most unusual assaults upon the most wonderful man this country has produced.  In paragraph 5 of the complaint the unusual attack is made upon her husband's father along with him, for having purchased eighty acres of land from Pillow for one thousand eight hundred and thirty dollars in 1878, of which purchase one thousand, one hundred forty-six dollars and eighty-five cents was paid in cash and two notes given for three hundred forty-one dollars and fifty-seven cents each, which she alleges was paid by her money turned over to her manager after she married him, and she wants an accounting.  What interest have any of the other defendants in this old transaction?  It is remarkable, we most respectfully submit, that after more than thirty years she attempts to fasten a resulting trust upon this land. She accounts nothing for her husband's "brain and brawn."

We think it not improper to speak to this honorable court as apology for the length of this synopsis of the amended bill of complaint on the most important subject of its multifariousness, and especially to call the attention of the court to the general and universal charge in mere statement, "paid out of the partnership funds." Of the "multitude of transactions with which said partnership was engaged and in which said partnership was interested during the entire period above mentioned," it occurs to us as being folly to ask this court to hold all the defendants to joint and common defense.  Our sin-

cere hope is based upon legal truth, as we see it, that the bill will be dismissed in toto and a proper administration allowed with any possible equity between husband and wife, or between them, or either of them, and others, properly asserted and determined what parties who may join issue upon any proposition. Our strongest argument must be in invoking the judgment of this honorable court as to whether it be possible for one bill to be free from the severest condemnation of duplicity that covers thirty years and hundreds of different kinds of large transactions with as many individuals and corporations.

Counsel's brief and argument in the court below, as it will doubtless be here, was to the effect that where all defendants have a common interest in the general subject-matter, the bill cannot be multifarious. This may be true as an abstract proposition, but the statement is wholly inapplicable here.

The authorities are agreed that no specific rule may be given by which to accurately determine when a bill is "multifarious" or may be held to prevent a "multiplicity of suits." We repeat that this case "speaks for itself." 64 Miss. 258 (257) 1886; 66 Miss. 587 (1889); 58 Miss. 838; Code 1906, sec. 598.

So, then, on the subject of our first assignment of demurrers, multifariousness, our evidence lies in the complaint as amended and upon the law arising from these plain facts, and in the sound judgment of the lawyers on the bench.

*Gwin & Mounger* and *Tim E. Cooper,* for appellee.

In *Butler* v. *Spann,* 27 Miss. 234, it is said that it is impossible to lay down any rule as to what constitutes multifariousness, that the application of the rule is held to depend upon the particular circumstances of each case, but when the parties have one common interest touching the matter of the bill, although they claim under distinct

99 Miss.]                  Brief for appellee.

titles, and have independent interests, the bill is not mul-
tifarious.

In *Garrett* v. *Mississippi & Alabama Railroad Co.,*
Freeman's Chancery Rep. 70, it is said that complainant
cannot demand by one bill several matters of different
natures against several defendants, yet when one gen-
eral right is claimed, although defendants have separate
and distinct rights, a demurrer will not hold.

In *Wright* v. *Sheldon,* S. & M. Chancery, 399, it is held
that, "It is not necessary that privity exist between each
of two defendants provided privity exists between each
of the defendants separately and the other defendants
upon whom the gravamen of the bill rests. Where there
is one general claim and the defendants have a common
interest in the point litigated, they are properly united,
though their rights as to the subject matter of the suit
be separate."

In *Waller* v. *Shannon,* 53 Miss. 500, it is said that,
"It is not indispensable that all parties should have an
interest in all the matters contained in the suit; it will
be sufficient if each party has an interest in some mat-
ters in the suit and they are connected with the others,"
citing Story Equity Pleading, sec. 271 A.

While it is frequently said by the court that it is im-
possible to lay down any rule for defining multifarious-
ness, yet the decisions are unanimous in supporting the
rule thus laid down.

This rule is illustrated and established in the follow-
ing decisions of our court: *Garrett* v. *Miss. & Ala. R. R.
Co.,* Freeman's Chancery Rep. 70; *Martin* v. *Pleasants,*
S. & M. Chancery Rep. 17; *Wright* v. *Sheldon,* S. & M.
Chancery Rep. 399; *Nevitt* v. *Gillespie,* 1 How. (Miss.)
108; *Delafield* v. *Anderson,* 7 S. & M., 630; *Butler* v.
*Spann,* 27 Miss. 234; *Snodgrass* v. *Andrews,* 30 Miss.
472; *Forniquet* v. *Forstall,* 34 Miss. 96; *Thomas* v.
*Thomas,* 45 Miss. 263; *McGowan* v. *McGowan,* 48 Miss.
453; *Jones* v. *Foster,* 50 Miss. 52; *Waller* v. *Shannon,* 53

Miss. 500; *Taylor* v. *Smith,* 54 Miss. 84; *Bishop* v. *Rosenbaum,* 58 Miss. 84; *State* v. *Brown,* 58 Miss. 835; *Barry* v. *Barry,* 64 Miss. 712; *Hardie* v. *Bulger,* 66 Miss. 577; *Ga. Pac. Ry. Co.* v. *Brooks,* 66 Miss. 583; *Henry* v. *Henderson,* 79 Miss. 454; *Moseley* v. *Larson,* 86 Miss. 288; *Thames* v. *Mangum,* 87 Miss. 575.

All of the decisions holding bills multifarious are but further illustrations of this rule. In no case has the bill been held multifarious where there was one general claim or where the defendants had a common interest in the point litigated, but where such was not the case the bill was held multifarious. *Columbus Ins. & Banking Co.* v. *Humphries,* 58 Miss. 258; *Robert* v. *Starke,* 47 Miss. 263; *Darcey* v. *Lake,* 46 Miss. 109.

Moreover, on the other hand, where there is "a common right or title" or "a community of interest in the subject-matter of controversy" not only will the bill be subject to the objection of multifariousness, but equity has jurisdiction on this ground alone, and will enjoin in order to prevent a multiplicity of suits. *Whitlock* v. *Yazoo, etc., R. R.,* 91 Miss. 779; *Railroad* v. *Garruson,* 81 Miss. 264; *Crawford* v. *Railroad,* 83 Miss. 708; *Tisdale* v. *Insurance Companies,* 84 Miss. 709; *Pollock* v. *Oklahoma Savings Bank,* 61 Miss. 293.

The bill of complaint charges, and the demurrer admits, the partnership; that all of the lands, all of the money, all of the corporate stock, the interests in the mercantile establishments, the interest in the ginneries, all of the bank stock fraudulently transferred on the books of the defendant banks, and all of the property sued for was the property, the assets, of the firm composed of the complainant and B. L. Jones; that it was all purchased with partnership funds, for the partnership account, in a partnership name, and held and owned by the partnership. There is therefore "a community of interest in the subject-matter of the controversy;" there is "a common interest touching the matter of the

bill;" "a general right claimed;" to wit, the winding up and settlement of this partnership. There is not a single defendant who is not interested in this settlement. The interest of no defendant in any part of this property can be determined without a settlement of the partnership. It is admitted that the complainant is interested as a co-partner of B. L. Jones in all of this property and her interest cannot be determined without such settlement of the partnership. As is said in *Moseley* v. *Larson,* 86 Miss. 288, "The several matters litigated are so related to one common subject (*i. e.,* the settlement of the partnership) that one cannot be well determined without the other." The settlement of the partnership is essential and a prerequisite to the determination of the rights and interests of every party to the suit named in the bill.

We therefore respectfully submit that there is no merit in the first or second objection to the bill for multifariousness.

SMITH, J., delivered the opinion of the court.

The bill of complaint is not open to objection on the ground of multifariousness. Among our numerous decisions dealing with this subject, we will refer specially only to *Butler* v. *Spann,* 27 Miss. 234; *Garrett* v. *Railroad Co.,* Freem. Ch., 70; *Wright* v. *Shelton,* Smedes & M. Ch., 399; *Waller* v. *Shannon,* 53 Miss. 500.

Since, under our statute (section 2517 of the present Code), all of the disabilities of coverture have been removed, a married woman may lawfully enter into a partnership with her husband. We can add nothing to what was said on this subject by this court in *Toof* v. *Brewer,* 3 South. 571. In that case the court was dealing with a partnership existing between husband and wife in the state of Arkansas; consequently the case has not been officially reported. We now direct that same be officially reported. See, also, *Hoaglin* v. *Henderson,* 119 Iowa,

720, 94 N. W. 247, 61 L. R. A. 756, 97 Am. St. Rep. 335; *Suau* v. *Caffe*, 122 N. Y. 308, 25 N. E. 488, 9 L. R. A. 593; *Burney* v. *Savannah Gro. Co.;* 98 Ga. 711, 25 S. E. 915, 58 Am. St. Rep. 342; *Ellis* v. *Mills*, 99 Ga. 490, 27 S. E. 640; *Vizard* v. *Moody*, 119 Ga. 918, 47 S. E. 348; *Morrison* v. *Dickey*, 122 Ga. 353, 50 S. E. 175, 69 L. R. A. 87; *Belser* v. *Tuscumbia Banking Co.*, 105 Ala. 514, 17 South. 40; *Schlapback* v. *Long*, 90 Ala. 525, 8 South. 113; *Lane* v. *Bishop*, 65 Vt. 575, 27 Atl. 499; *Bernard & L. Mfg. Co.* v. *Packard*, 64 Fed. 309, 12 C. C. A. 123; *In re Kinkead*, 3 Biss. 405, Fed. Cas. No. 7824.

We have not considered the fifth and sixth grounds of demurrer, for the reason that same do not go to the whole bill, and consequently can have no place in a general demurrer.

There is no merit in the other matter complained of.

*Affirmed and remanded.*

