SCHAFF *v.* KAHN & BERNSTEIN.

[83 South. 622, In Banc. No. 20953.]

1. APPEAL AND ERROR. *Whether cross-bill presents matter of common-law or equity jurisdiction will not be first considered on appeal.*

The question as to whether a cross-bill presented matter purely of common law jurisdiction and not equity jurisdiction cannot arise on appeal to the supreme court where no such objection was raised, in the court below.

2. EQUITY. *Cross-bill based on mistake in delivery of shipment of mules by carrier was germane to issue by carrier to recover value of shipment erroneously delivered.*

In a suit by a carrier to recover the value of a carload of mules delivered to defendants by mistake instead of another shipment intended for them, but delivered to a third party, a cross-bill in equity based on freight paid, expenses of feeding and handling, and damages to the second shipment, could be maintained; the two demands growing out of one transaction and

being vitally related, so that the issues presented by the cross-bill were germane to the issues made by the original bill, particularly in view of the fact that if defendants could not maintain their cross-bill they would be forced to go to a foreign jurisdiction to prosecute their cross-action.

Appeal from the chancery court of Adams county. Hon. R. W. Cutrer, Chancellor.

Suit by Chas. E. Schaff receiver of the Missouri, Kansas & Texas Railroad Company, against Kahn & Bernstein, with cross-bill by defendants. From a decree overruling the demurrer to the cross-bill, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Ratliff & Kennedy,* for appellant.

The contention of the complainant is that by paying off the claim of J. P. King, they should be subrogated to all his rights against Kahn & Bernstein and they stand in the shoes so to speak of King and that any claim Kahn & Bernstein might have against the director general of railroads for damages to another and distinct, and separate shipment cannot be set off or recouped in this action, where the only right that the complainants have is a right of subrogation or the right to put himself in the shoes of King, who had this claim of King's; and secondly, the complainant conversion of his mules.

Kahn & Bernstein do not allege that they had any claim against King and complainant is suing for the known value of mules which belonged to King. If King had no right of action against Kahn & Bernstein for the wrongful conversion of his mules, then the complainant would have no cause of action against Kahn & Bernstein, as the rights of complainant against Kahn & Bernstein depend entirely upon the rights that King had; any claim of any kind or character that

Kahn & Bernstein had against the director general of railroads could not be set off or recouped against this claim of King's; and secondly, the complainant contends that his action is one for a known, fixed and definite sum, the value of the carload of mules and the claim of the defendants, which they are seeking to either offset or recoup against the demand of the complainant, is for an unknown, indefinite unliquidated sum for damages to another separate and distinct car of mules and horses the one transaction having nothing whatever to do with the other.

We understand that it is a general rule, which has been uniformly applied in this state, that an unliquidated claim for damages is not the subject of offset or recoupment against a suit for a definite, known and fixed sum. We understand that it has been held, and in fact, it is the general rule that a defendant may recoup even a claim for unliquidated damages against a plaintiff, who sues him for a definite sum, where the defendant's claim for unliquidated damages grows out of the same transaction, for which the complainant sues or even out of similar transactions between the same parties in the past but it never has been held so far as we have been able to learn that a defendant may recoup a claim of unliquidated damages against a suit based upon a fixed and known, definite sum, having no connection whatever with the unliquidated claim for damages of the defendant.

Indeed, we understand from the pleadings in this cause, that counsel for the appellees concede this to be the law, but undertake to avoid the effect of that rule by setting up an agreement between defendants and a representative, the adjuster or claim agent of the Missouri, Kansas & Texas Railway Company, that that rule should be abrogated in this particular case, and that they were, by virtue of this agreement, to have the right to set off or recoup this claim.

We are perfectly aware of the rule that for the purpose of this case, and on demurrer, all things that are well pleaded are to be taken as true, but we submit on the face of the cross-bill, that the agreement attempted to be set up is not well pleaded and is sufficient to take this case out of the general rule.

It must be perfectly clear to any one carefully reading the pleadings in this cause that the complainant's right upon which his cause of action is based is an equitable right of subrogation and is one for a fixed and definite amount and that the claim of unliquidated damages for injuries to another and distinct shipment of mules and horses to the defendant had no sort of connection or relation to or with the claim upon which the complainant sues and it has been the universal rule in this state, at least, so far as we have been able to find after diligent search of the authorities that a claim for unliquidated damages, such as this is, cannot be set off or recouped under the state of facts, appearing in the pleadings in this cause: *Casper* v. *Thigpen,* 45 Miss. 635.   See also 34 Cyc., under the title, Recoupment, Set-off and Counterclaim, particularly page 654, under the subtitle, Unliquidated Demands.

We therefore, feel perfect confidence in our position that the chancellor erred in overruling this demurrer to the cross-bill and that his ruling thereon should be reversed and the demurrer sustained.

*Engle & Lauy,* for appellee.

The judgment of the lower court should be sustained for two reasons: First because under the law of the state of Mississippi this is a proper case for the defendant to plead by way of set-off, recoupment or cross-bill as they have done.

In the case of *Wilkinson* v. *Searls,* the facts are as follows: "On April, 2, 1892, C. J. Searles a broker,

doing business in Vicksburg, Miss., sold D. W. Wilkinson. a broker of Jackson, one hundred and twenty-five barrels of meal for two hundred and ninety-five dollars; prior to this it seems there had been various transactions between them, and Wilkinson had bought various bills of corn and other produce from Searls. On the 3rd day of May, 1892, Searls sued Wilkinson *in assumpsit* for two hundred and ninety-five dollars, the price of the meal sold on April 3d. Wilkinson admitted liability for this bill, but filed pleas by way of set-off amounting to two hundred and forty-six dollars, and tendered with his pleas a sum sufficient to pay balance due plaintiff, with interest. Plaintiff demurred to these pleas, because the account sought to be set off shows the claim to be for unliquidated damages. The demurrer was sustained. Defendant then filed additional pleas, 4, 5, and 6, and exhibit showing the nature and character of the items of which the defendant claimed an indebtedness by way of set-off. These pleas were in substance as follows: (4) that the defendant avers that before the commencement of this suit, plaintiff contracted to sell and deliver to him, at Jackson, Miss., ten carloads of corn, of a certain grade of corn; that the contract was in writing; that defendant paid the plaintiff for this corn according to contract, and before it was known that the plaintiff had not shipped the kind of corn he contracted to sell; that he shipped corn of a lower grade, of less weight; that the difference in value between the corn purchased and that actually delivered by the plaintiff was the sum of two hundred forty-six dollars and twelve cents and defendant sought to set off this amount against the claim of plaintiff. The fifth plea sets up substantially the same facts in regard to the ten carloads of corn; that the corn received was of less value by the sum of two hundred eighteen dollars and sixty-four cents than the corn contracted for; that defendant had previously pur-

chased from plaintiff a carload of corn and a carload of oats; that these were short in weight, making a difference in value as to this of twenty-seven dollars and forty-eight cents. The sixth plea sets out that there had been various transactions between the parties, and that there was at and before the commencement of this suit an open and unsettled account current between them in which plaintiff was indebted to defendant in the sum of two hundred forty-six dollars and twelve cents of the items above mentioned. Plaintiff demurred to these pleas, because the pleas are an attempt to set off unliquidated damages growing out of prior transactions; that there is no sufficient allegation of any set-off or cross-action; and that said pleas are no defense; defendant declined to plead further, and judgment was entered in favor of plaintiff and defendant appealed.''

And in that case no less a learned judge than CAMP-BELL, C. J., held as follows: ''CAMPBELL, C. J. The demurrer should have been overruled. The substance of the fourth, fifth, and sixth pleas is that the plaintiff has in his hands, by reason of former transactions (set forth in the pleas with needless particularity), money which the defendant is entitled to recover by an action for money had and received, and whatever may be true elsewhere, under our statute this is a valid set-off. There is nothing in any of the cases from our re ports cited by counsel inconsistent with this view. On the contrary, they sustain it. Reversed, demurrer to the fourth, fifth and sixth pleas overruled, and cause remanded for further proceedings in the circuit court.'' The *Wilkinson* v. *Searls case,* goes much further than does the instant case in holding that set-off is proper under such facts as are now present and we submit that as long as the doctrine of *stare decisis et non quieta movere* obtains in this state that the learned chancellor was right in overruling the demurrer. See,

27. 121—Miss.

also, *Miller* v. *American National Bank,* 76 Miss. 84, 23 So. 439; *Adams Machine Co.* v. *Thomas,* 87 Miss. 391, 39 So. 810; *Hayes* v. *Slidwell Liquor Co.,* 99 Miss. 583, 55 So. 356.

Courts of equity as a general rule put the same construction on the statute of set-off as do courts of law, and generally follow the law in regard to matters of set-off unless there is some peculiar circumstance or intervening natural equity growing out of the mutual transactions or conditions of the parties going beyond the statute which constitutes the general basis of set-off at law and which a court of law could not regard in which case courts of equity will allow a set-off which a court of law would refuse. 34 Cyc. 635, (3) citing 7 How. 386; 40 Am. Dec. 70.

The several forms of cross demand, such as recoupment, set-off, counter-claim and the likes, are similar, in that their common object is by allowing the entire controversy between the parties to be litigated and finally determined in one action, to advance justice by preventing circuity of action and suppressing multiplicity of litigation, whereever this can be done with entire justice to all of the parties before the court, and without great inconvenience in practice. These remedies are for this reason favored by the courts, which have been disposed in recent years to extend to the greatest length compatible with the legal rights of the parties, the doctrine of allowing matters to be settled in one suit rather than compel defendant to resort to his cross-action; and the courts will, where possible, relax the strict rules of pleading where a right of set-off is shown, and in equity the most liberal rules prevail in allowance of set-off to prevent injustice and circuity of action." 34 Cyc., 644-646.

Second: The demurrer should have been overruled for the reason that at page 10 of the record, paragraph 2, it is set out that: "Respondents show that by the

conduct and action of the complainant, its representa-
tives and agents, it is estopped to object to having con-
sidered in this case the damage sustained by the de-
fendants in connection with the delayed shipment and
the expense incurred by them and omission to which
they are entitled in connection with the sale of the first
shipment.'' It will be noted here that the appellees
plead an estoppel on the part of appellant.

The appellant by its demurrer admitted that they
were estopped to object to having considered in this
case the damages sustained by the appellees in connec-
tion with the delayed shipment and the other items
for excess freight and feeding charges and for a com-
mission and by the demurrer admitting that they are
estopped, we submit that the demurrer must be over-
ruled.

The appellant cannot blow hot and cold and by the
demurrer admit the estoppel of having the two matters
considered together and in the next breath claim that
the suits cannot be considered together. The statutory
restrictions upon set-off may be abrogated either by
agreement between the parties or by estoppel.   34
Cyc.  648.

An agreement to allow set-off need not be expressed
but may be inferred from the circumstances and as
courts favor the settling of disputes between the parties
in one action an agreement to allow set-off will be in-
ferred from very slight circumstances.   34 Cyc. 649-
650.

''In the view of equity the setting off of one demand
against another between the same parties is extremely
just and where there is any technical difficulty in the
way of its being done without an agreement, the
court accepts slighter evidence of such an agreement
than is usually required in order to establish disputed
facts.''   34 Cyc. 6650, note 56, citing 10 Sm. & M. 179.

For the above reasons set forth we submit that the

learned chancellor's judgment should be sustained and the demurrer was properly overruled. We ask for an affirmance in this case.

STEVENS, J., delivered the opinion of the court.

The pleadings in this case consist of an original bill, answer, and cross-bill. This appeal is prosecuted from a decree of the chancery court overruling the demurrer to the cross-bill. The bill is one exhibited by Chas. E. Schaff, receiver of the Missouri, Kansas & Texas Railway Company, against Kahn & Bernstein to recover the value of a carload of mules which the complainant railway company transported from Ft. Scott, Kan., to Natchez, Miss., and by mistake delivered to appellees. The bill and cross-bill reflect the following state of facts: A member of appellee firm went to Ft. Scott, Kan., for the purpose of buying mules and horses and there purchased from the Ft. Scott Horse & Mule Company a carload of horses and mules, consisting of twenty-one mules and eight horses, to be shipped to appellees at Natchez. This car was delivered to appellant railway company for shipment. At the same time one J. P. King of Tennessee purchased from the same parties twenty-six mules and delivered the same to the complainant railway company to be shipped to Dechard, Tenn. By mistake Mr. King's carload of mules was billed to and delivered to appellees, while appellees' mixed car of horses and mules was shipped to Tennessee. When the King mules arrived at Natchez, Mr. Kahn, a member of appellee company, advised the agent that he, Kahn, did not think the mules belonged to appellees, but the agent insisted upon delivery and assured appellees that if any mistake had been made that appellees would not suffer. The shipment to Mr. King in Tennessee was rejected, and eventually the mixed carload of horses

and mules was reshipped from Tennessee to Natchez and delivered to appellees. Appellant thereupon paid Mr. King the value of his mules and by original bill sues appellees for the amount paid King. Appellant did not take a bill of sale or assignment of the cause of action from Mr. King, and on that account avers in the original bill the necessity of instituting this suit in equity. The answer of the defendant is made a cross-bill in which it is averred that at the time the first shipment of mules reached appellees Mr. Berstein, a member of the firm, was absent buying mules and that his partner, Max Kahn, protested against receiving the shipment and the agent then "told him to go ahead and sell the mules and pay the freight bill, and if it developed that that there was a mistake then he could adjust with the railway company for what he got for the mules less the expenses of selling them and his reasonable commission," etc., and with this understanding he did pay the freight, sold and disposed of the mules, and by reason thereof is entitled to a reasonable charge or commission for selling them.

It is furthermore set forth in the cross-bill with a sufficient degree of certainty that the carload of horses and mules which appellees did buy were erroneously shipped and diverted to other points, were kept on the road a long time, that is to say, from February 5, 1918, to February 23, 1918, and that on account of the long and circuitous journey the animals were debilitated, abused, and underfed and injured in transit and depreciated in value in the sum of at least one thousand dollars; that there was an overcharge in the feed bill amounting to three hundred and twenty-five dollars; and that three of the animals received injuries from which they subsequently died, and that the value of the three dead animals is at least four hundred and eighty dollars.

It is furthermore averred that appellees complained at the rough treatment given the shipment, and that an adjuster for appellant advised them not to put in a separate claim on account of alleged damages, but stated that appellees' claim for damages would be adjusted in connection with the settlement of the car-load of mules delivered appellees by mistake, and that both claims had been treated and considered by all parties to this suit as a claim growing out of the same transaction, and that appellees are entitled to plead the amount of their demand against appellant as a set-off. There is tabulated in the cross-bill the following itemized statement of appellees' set-off:

| | | |
|---|---|---|
| Amount of freight paid on shipment sued for | $ 140 | 00 |
| Amount of feed and expenses of handling 26 mules sued for | 200 | 90 |
| Reasonable commission for handling same ... | 520 | 00 |
| Total of above | $ 860 | 00 |
| Damage to animals in second shipment .... | $1,000 | 00 |
| Excess feed and freight bill | 325 | 00 |
| Value of three animals which died out of second shipment | 480 | 00 |
| Total damage on all of above items .... | $2,665 | 00 |

It is furthermore averred in the cross-bill that if appellees are not entitled to plead their counterclaim by way of a set-off, they averred that the mistake in the two shipments is one transaction and that appellees should be permitted to plead their cross-demand by way of recoupment. There are other and further allegations in the cross-bill to the effect that appellees should be accorded the right to plead their demand by way of cross-bill. The original bill seeks a recovery in the sum of six thousand, fifty-six dollars and ninety-six cents. There was a general demurrer to the cross-bill,

submitting several grounds of attack, but the substance of the demurrer submits the main contentions that the unliquidated demand of appellees cannot be off-set against the socalled fixed demand sought to be recovered in the original bill and that the cross-demand of appellees is based upon a separate and distinct transaction and that the two demands are unrelated. The chancellor overruled the demurrer, but granted an appeal to settle the principles of the case.

There is no contention in this case that the cross-bill presents matter purely of common-law jurisdiction and not of equity jurisdiction, and upon this appeal no such question could arise. *Irion* v. *Cole,* 78 Miss. 132, 28 So. 803. The real issue upon the demurrer is whether the cross-bill introduces such new matter as is not necessary for appellees' defense and that is in no way germane to the issue raised by the original bill. If the cross-bill is predicated upon a demand which grows out of the same subject-matter involved in the original bill, then certainly the demurrer is not well taken and was properly overruled. *Dewees* v. *Dewees,* 55 Miss. 315.

As we view and interpret the facts set forth in both the original bill and the cross-bill, the whole controversy is the offspring of a mistake for which appellant railway company must be responsible. It is perfectly manifest from the pleadings that appellant received on the same day for shipment two separate carloads of live stock consigned to different parties at different places; that these two shipments were confused and interchanged; that appellant thereafter recognized and admitted its responsibility by settling with King and then initiates litigation which is the upshot of its own negligence. The very demand upon which appellant is forced to enter the door of equity is necessitated by the very mistake which has given rise to appellees' claim for damages. The two demands grew out of

424  Schaff v. Kahn & Berstein.  [Sup. ·Ct.

Opinion of the ccurt. ·   [121 Miss.

one transaction and· are vitally related. This being true, we think the. issue presented by the cross-bill is germane to the issue made by the original bill. It is stated in 34 Cyc., p. 646:

"In equity the most liberal rules prevail in allowance of set-off to prevent injustice and circuity of action."

We believe it is the tendency of modern decisions to sufficiently relax the strict technical rules of pleading to permit matters in dispute between the same parties to be settled in one suit and thereby advance instead of delay justice and thereby avoid multiplicity of litigation. The rule has its reasonable limitations, and these limitations are usually expressed in equity practice under the general doctrine that the issue presented by the cross-bill must be germane to the main one presented by the original bill. To maintain the cross-bill in this case will, we think, promote justice and avoid circuity of action. It appears upon the face of the pleadings that if appellees cannot maintain their cross-bill they will be forced to go to a foreign jurisdiction to prosecute their cross-action. Many authorities hold that nonresidence is a sufficient ground for an equitable set-off. *Ewing Merkle Elec. Co.* v. *Louisville Light & W. Co.*, 92 Ark., 594, 124 S. W. 509, 30 L. R. A. (N. S.) 21, 19 Ann. Cas. 1041, and case note. Without intimating any opinion as to whether nonresidence is alone a sufficient ground for entertaining a cross-bill, we do think it is a circumstance which strengthens the equity of appellees' demand.

The decree of the learned chancery court will be affirmed, and the cause remanded.

*Affirmed and remanded.*