## BARRY *v.* MATTOCKS *et al.*

(Division A.   Jan. 13, 1930.)

[125 So. 554.   No. 27535.]

**Alfred Stoner**, of Greenwood, for appellant.

Gardner, **O**dom & **G**ardner, of Greenwood, for appellee.

428

Argued orally by **Alfred Stoner**, for appellant, and by **H. T. Odom**, for appellee.

**McGowen, J.,** delivered the opinion of the court.

From a decree of the chancery court, Barry, the appellant, prosecutes an appeal here, and the appellees file a cross-appeal.

The record in this case is rather voluminous, and many questions having been satisfactorily disposed of in the court below, we shall only state such facts as we deem necessary with each of the several questions presented to us for decision.

More than forty years ago W. S. Barry and W. S. Wingfield became associated in business, Barry being a landowner and merchant in connection therewith, and Wingfield being just an employee of Barry; then they became partners in the mercantile business in 1896 or 1897, and operated as W. S. Barry & Co. The firm rented Barry's lands, and from that time until Wingfield's death in 1923 they operated a planting business and a store in connection therewith, and in that time they had acquired a considerable land and personal estate. W. S. Barry continued the operation for the balance of the year, and in 1924 Mrs. Wingfield, the widow, and Barry operated the business. In 1925 Mrs. Wingfield, having married Mattocks, removed to Arkansas, and S. K. Keesler took over the interest of Wingfield; and Barry and Keesler continued until about May 22, 1925, when Mrs. Mattocks and Keesler conveyed the Wingfield interest to the

brothers and sisters of Wingfield, decedent, but Barry continued said business for that year.

On January 1, 1925, W. S. Barry field a bill for partition of certain lands owned by the partnership against the widow of Wingfield and his brothers and sisters; they claiming some kind of interest in the decedent's estate, Mrs. Mattocks filed an answer disclaiming any interest in the lands.

The Wingfields filed an answer admitting the ownership of the lands described in the bill. Barry owned a one-half interest, and they together owned the other half interest. They set up some lots as omitted from the bill; that the lands were acquired by the partnership; that there had been no settlement of the partnership estate, and set forth at length thousands of dollars worth of personal property owned in the same manner as the lands, and prayed for a partnership accounting and settlement by the court and made the answer a cross-bill.

The answer also set up that they owned a tract of one hundred acres known as St. Joe plantation with Barry in the same manner as the other lands, and prayed that this particular land be also partitioned. The answer of Barry to the cross-bill denied any right of the parties to maintain the cross-bill, and claimed St. Joe plantation as his individual lands.

The court below had an audit made of the partnership, and also appointed an auditor relative to the partition and ownership of a mass of articles of personal property who duly reported to the court.

The court below appointed commissioners to partition the lands not in dispute, and entered its final decree adjudging the rights of the parties in numerous details and particulars.

The court decreed that St. Joe belonged to the partnership, and ordered it sold for division of the proceeds. In its larger aspects the decree was satisfactory, but in certain particulars both sides were dissatisfied, and appeal here.

On the direct appeal we shall take up the argued assignments of error in an order which logically appears to us to be proper.

First. It is contended by appellant that the court erred in overruling the demurrer of appellant to the cross-bill, in that the cross-bill sought a partition of personalty, and a partnership accounting, and was not germane to the original bill for partition of specific lands instituted under sections 3035 and 3036, Hemingway's 1927 Code (sections 3521 and 3522, Code of 1906).

This question is not free from difficulty, as none of the pleadings contained any allegation that the partnership owed any debts. No new parties were brought in by the cross-bill.

Appellant contends that the cross-bill departed from the main issue and brought into the suit matters that were not germane to the issues involved in the partition of the land, and was therefore demurrable, citing Stansel v. Hahn, 96 Miss. 616, 50 So. 696; Gilmer v. Felhour, 45 Miss. 627.; Fletcher v. Wilson, Smedes & M. Ch. 376; 16 Cyc. 331; 10 R. C. L. 184. The lands sought to be partitioned, as disclosed by the cross-bill, were acquired in the name of W. S. Wingfield and W. S. Barry, and were purchased by the partnership with the funds of the partnership. The cross-bill further sought a complete administration of the partnership estate and a complete adjustment of the rights of the partners. Had the original bill or the cross-bill alleged rights of creditors, the question would be free from doubt. All the allegations of the cross-bill, if they had been embraced in the original bill, would not have rendered the bill multifarious. Section 373, Hemingway's 1927 Code (section 598, Code of 1906). Also see Jones v. Jones, 99 Miss. 600, 55 So. 361.

The partition of personalty is a statutory proceeding of which the chancery court has jurisdiction. Section 3057, Hemingway's 1927 Code (section 3543, Code of 1906).

We deem it unnecessary to cite authorities for the proposition that equity has original jurisdiction of the settlement of partnership estates and an accounting between partners.

According to the contention of appellant, we have here a case where a bill would lie to partition the real property, to partition the personalty, and to obtain a partnership settlement and accounting. If, perchance, the three separate bills had been filed, we can see no good reason why the chancery court would not have been authorized to consolidate the cases and try them as one. Section 362, Hemingway's 1927 Code (section 587 Code of 1906), authorizes a defendant to make his answer a cross-bill; and authorizes the introduction of new matter material to the defense; and authorizes a discovery of matter material to the defense.

The personal estate, the accounting, and the real estate are all connected with, and grow out of, the partnership of W. S. Barry & Co. As we have shown, a multiplicity of suits would be necessary in order to determine the relative interests of the partners in the partnership estate. Of course, there may not be introduced into the litigation, by cross-bill, new material not necessary to the proper defense of the case which is not germane to the contents of the original bill, but the tendency of modern cases is in the direction of a modification and partial relaxation of this rule, and not to apply it strictly and technically where the application of the rule would tend to increase and prolong litigation rather than settle it. The settlement of rights of parties speedily, promptly, and fairly has always been the aim of court of equity. All the issues presented by the cross-bill are intimately related to, and are directly connected with the partnership in this case. Indeed, there is authority for the position that the lands belonging to a partnership may not be partitioned until there has been a settlement of the partnership estate. This is especially true where the debts of a partnership have not been paid. The

interest of a partner in partnership property, whether real or personal property, is his interest in the net balance after deducting from the whole the debts thereof, and after adjusting the equities between the partners. While the legal title to lands may be in the several members of a partnership, yet the title to the lands is held by the partners as trustees, first, to pay the creditors thereon; and, second, to adjust the equity between the partners according to their several interests. And while at law they will be presumed to be equal partners where there is no reservation in the deed, yet in equity the land so held is just as much a part of the partnership assets as the personal estate, and is amenable to creditors in the same manner. See Scruggs v. Blair, 44 Miss. 406; Whitney v. Cotton, 53 Miss. 689. It is said that to the ends above set forth the real estate is treated as personal property by the fiction of equitable conversion.

Limiting this decision to the facts of the case before us as made by the pleadings, we cannot say that the matter set forth in the cross-bill was not germane to the matter in the original bill, if we apply the above principles of law. See Griffith's Chancery Practice, sections 375-381; 10 R. C. L., p. 485, par. 263; Schaff v. Kahn & Bernstein, 121 Miss. 412, 83 So. 622.

Second. It is insisted that the chancellor erred after announcing his opinion in vacation, in that he then passed the case to the term time, and at term time permitted an amendment to the answer and cross-bill setting up a correcting deed, so that the property involved was accurately and certainly described. In so far as remanding the case for further proof is concerned, this action is generally authorized by section 10, chapter 151, Laws of 1924 (section 281 of Hemingway's 1927 Code). However, we do not think it necessary to introduce a prolonged discussion of this proposition, for the reason that the correct bill of sale, or deed, was as to personal property, and it is manifest to us from the entire record

that the property was intended to be included in the original deed if, in fact, it was not so included, and that by mutual mistake it was omitted from the original deed, or bill of sale. We think substantial justice has been administered in so far as this action of the court is concerned, and we would not reverse a case of this magnitude for that reason.

Third. Appellant insists that, by the decree of the lower court, Wingfield, a partner who went into the original partnership in 1897 as a working partner for one-half of the net profit, and who had received said profits, was allowed one-half of the original capital investment, which capital was originally furnished by Barry. From a close study of this record it is clear to us that by the audit had by the partners when they were in some sort of disagreement in 1917 the original capital investment was charged to the partners and paid by the partnership, and the audit distinctly states that Barry assented thereto. It was a question of fact on the whole case for the chancellor, and we cannot see that it was manifestly wrong.

Fourth. It is said that the partnership did not own the one hundred acre tract of St. Joe plantation, for the reason that W. S. Barry acquired record title to same in the year 1889. The court below heard the evidence, and held that this particular tract of land belonged to the partnership and so decreed.

On June 5, 1889, Barry purchased at a commissioner's sale for partition the land in controversy, and had recorded a deed thereto for a consideration of fifty-four dollars. At that time Wingfield and Barry were only mercantile partners. A few days later Mark Love, who owned an interest in the land before the sale, executed to Barry & Company, the mercantile partnership, a trust deed on these lands, and from time to time renewed these trust deeds in favor of the partnership until January, 1903. Mark Love having died in 1902, the trust deed was foreclosed, and a trustee's deed was executed to Barry

& Co., the firm composed of Barry and Wingfield. Barry says that from the time he told Mark Love he might go upon the lands, and, if he ever got able, he could pay for them, he entirely forgot the lands, and never thought of them any more. We think the evidence of R. S. Wingfield, and other witnesses, tends to establish the fact that Mark Love was in the open, continued, hostile, adverse possession of the land from 1889 until the date of the foreclosure; that his tenants worked the land and paid the rent to him. He asserted an open, notorious, hostile claim as against Mr. Barry's claim by the execution of a trust deed. Barry never was charged on his individual account with any taxes on the land, and never disturbed the firm's possession of the land until after Wingfield's death in 1923. We think that, independent of any question of estoppel, the evidence is sufficient to vest the title in Mark Love by adverse possession for more than ten years; and, the firm having acquired this title from Love, that the partnership was the owner of the lands. There is no hint of fraud or concealment, on the part of Wingfield, with reference to this land, in his dealing with Barry. It is shown in this record that these lands were listed as firm lands, and carried on their books as such, and that in 1917, when the audit was had, these lands were listed as partnership assets by the auditors, and, while Mr. Barry made strenuous objections to certain results shown in that audit to the extent that relations as partners were strained and broken, but later renewed, yet Mr. Barry never made any show of objection to this listing during the lifetime of Wingfield. If he really owned the lands at any time and forgot it, the court had evidence sufficient to justify it in holding that Mark Love had acquired title by adverse possession, and, as no fraud, or concealment, or bad faith, can be attributed to Wingfield the managing partner, in the acquisition of the title for the firm, we do not see any reason for disturb-

ing the finding of the chancellor as there was no dispute of the material facts.

Fifth. The findings of the chancellor on disputed facts as to approval of the firm improvement account for 1923, 1924, and 1925 against Barry cannot be disturbed by us for the reason that we cannot say that the chancellor's finding on the facts is manifestly wrong.

Sixth. It is assigned as error that the chancellor held that Wingfield bound the partnership in the purchase of the Humphry-Coker Seed Company stock for a price of one thousand two hundred and fifty dollars, and that the purchase of this stock by Wingfield was his individual transaction, and that Barry should not be charged with one-half of it, for the reason that the purchase of stock was not within the scope of the planting and mercantile partnership. The stock was purchased in 1919; it was undertaken to be delivered in 1923, and, as soon as it was brought to Barry's attention, he repudiated the transaction, as we view the record, by his own utterances and by the action of his son who was his representative. The appellee undertakes to sustain the action of the chancellor in this behalf, because W. S. Wingfield, in the handling of the partnership, had full control and management, and had been allowed by Mr. Barry during the many years of the partnership to conduct it as he pleased, and because during the war period Wingfield bought government bonds and Barry accepted his portion thereof. It is quite well settled that the act of a single partner in subscribing to stock of a corporation, where the ownership of such stock does not appear to be within the scope of the firm business, or where there was no special authority to make such subscription, does not bind the partnership. See Wright Bros v. Merchants' & Planters' Packet Co., 104 Miss. 507, 61 So. 550, Ann. Cas. 1915C, 1111. We think it clearly appears that the purchase of this stock was not within the scope of the partnership, and that the partner did not consult

together with reference to the purchase of the stock. We do think that evidence showing that government bonds were purchased during the war period is a circumstance tending to show authority to bind the partnership, as the purchase of stock in a corporation by Wingfield was not related to the partnership business. We think the chancellor erred in permitting this item to be charged against the partnership.

Seventh. It is next insisted that the court erred in permitting Richard S. Wingfield to propound his claim for salary in the partition proceeding, and also that it was error to make him an allowance for salary after he had been discharged by the partnership of Barry & Keesler during the year 1925. Pretermitting any discussion of the evidence on this point, we can conceive of no reason why Richard S. Wingfield, as a creditor, should be permitted to propound his claim in the partition proceeding in this cause. While he was owner by purchase from Keesler and Mrs. Mattocks of an interest in the one-half interest of his brother, yet we do not know of any theory by which it was proper to adjudicate his claim in this proceeding; and we think the chancellor erred in allowing him this claim without regard to any issue of fact as to whether he was entitled to be paid for his services or not. R. S. Wingfield's claim was entirely alien to the issue.

On the cross-bill there are many assignments of error which are not argued and which we shall not undertake to consider. The only assignment of error which is argued by cross-appeal is that the court erred in decreeing that Barry, the cross-appellee in this particular, was entitled to retain the Shellmound gin as his (Barry's) individual property. We think that it was a question of fact, applying well-known principles of law, for the chancellor, and we cannot see that it was manifestly wrong. There is no question in the record but that the gin was on the individual land of W. S. Barry, and was there when the partnership was initiated, and that

(R. S. Wingfield testified) the firm kept up repairs and improvements up to 1918. Notwithstanding, Wingfield says that in 1910 there was practially a replacement of the old gin with a new, yet that did not authorize the firm to claim this gin located on the individual land of Barry. As we see it, the firm was simply carrying out its contract with Barry in that particular in so far as the repairs of 1910 are concerned. In addition to that, the chancellor has charged Barry individually with considerable money spent by him in the fall of 1925 on this particular gin. We could not harmonize the two views of the chancellor if we were to reverse this case on cross-appeal. In addition to that, we think the facts warranted the chancellor in finding that the Schellmound gin was the individual property of Barry; so that on cross-appeal the case is affirmed.

On direct appeal the case is affirmed in all particulars, except as to the item charged to the partnership in the purchase of the Humphry-Coker Seed Company stock, and in permitting the partnership to be charged with the claim propounded by R. S. Wingfield (individually) for services rendered to Barry & Keesler.

As this appeal intercepted the sale of that part of St. Joe plantation in controversy it will be necessary for us to remand this case in order that the sale may be consummated and the proceeds thereof divided between the Wingfield heirs and Barry; and it will be remanded for the purpose of making a correction in the decree in so far as it charges the partnership with the two items above mentioned—the Humphry-Coker Seed Company stock and the R. S. Wingfield claim for services. In all other respects the case is affirmed. The court below will make the corrections indicated and be governed by the findings of this court in that behalf.

Affirmed in part; reversed and remanded, with instructions.